IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYLER H., a Minor, and ) <br> LOJWANNA M., Individually and ) <br> as Guardian and Next Friend of KYLER H., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BOARD OF EDUCATION OF THE ) <br> CITY OF CHICAGO, DISTRICT 299 ) <br> ) <br> Defendants. ) | Case No. 08 C 1125 <br><br><br> Judge St. Eve <br><br> Magistrate Judge Mason |

**DEFENDANT BOARD'S**
**LOCAL RULE 56.1(a)(3) STATEMENT OF UNCONTESTED FACTS**

Defendant, Chicago Board of Education ("Board") by and through its attorneys, General Counsel Patrick J. Rocks and Assistant General Counsel James J. Seaberry, and submits its statement of Uncontested Facts under Local Rule 56.1(a)(3), stating as follows:

1. Kyler H. ("Kyler") received early childhood services until age 3 on the basis of developmental delay. Kyler was determined eligible for special education services in 2002 and received Early Childhood Special Education Services (ECSE) from September 2002, until the end of the 2004-5 school year. (*See* Exh. "A", Decision and Order, p.6#1).

2. When Kyler was six years old, in May 2005, CPS conducted an evaluation, which found that she had low average intelligence, and academic functioning consistent with her cognitive abilities. As a result the IEP team terminated her

eligibility for special education services. (*See* Exh. "A" Decision and Order, p. 6, #3).

3. For the 2005-2006 school year, Kyler transferred to Warren Elementary School, where CPS staff placed her in a regular first grade classroom, causing her to skip kindergarten. (*See* Exh. "A" Decision and Order, p. 6, #4-6).

4. Kyler did not make academic progress during first grade; progress reports show that she received failing grades in reading, writing, math, science and social studies for most of that time. (*See* Exh. "A" Decision and Order, p. 6, #7-8).

5. During second grade, Kyler also experienced academic difficulties, receiving grades of F in reading, spelling, written comprehension, and science. (*See* Exh. "A" Decision and Order, p. 7, #8-9).

6. Kyler has had behavioral difficulties since a young age, which have worsened over time. During first grade, Kyler was hospitalized at Hartgrove Hospital, a psychiatric facility for children and adolescents, for five weeks, beginning in April 2006. Kyler's mother requested that CPS evaluate her for a possible learning disability and emotional disorder in May 2006, April 2007 and again in May 2007. (*See* Exh. "A" Decision and Order, p. 7, #10-15).

7. Lojwanna M. retained Mauk & O'Connor, LLP and Michael A. O'Connor to represent them. (*See* Exh. "B" Plaintiff's Complaint, par. 14).

8. CPS scheduled a special evaluation on July 30, 2007. Kyler was assessed by CPS staff, including an Occupational Therapist, School Social Worker, Speech

Language Pathologist and School Psychologist. The evaluations were carried over to August 2, 2007. (*See* Exh. "A" Decision and Order, p. 8, #16-17).

9. An IEP team also convened on July 30, 2007, and again on August 2, 2007. The IEP team determined that Kyler was eligible for special education services, and the IEP team prepared an IEP for Kyler. Kyler's mother objected to the adequacy of the evaluations and to the adequacy of services provided in the IEP of August 2, 2007. (*See* Exh. "A" Decision and Order, p. 8, #17, 37, 45).

10. A due process hearing ensued, beginning on October 24, 2007, and continuing on October 25th and October 26th, before an independent hearing officer (IHO) appointed by the Illinois State Board of Education. Following the hearing the IHO issued a decision and order on November 16, 2007. (*See* Exh. "B" Plaintiff's Complaint, par. 18).

11. The IHO found that CPS denied Kyler a free and appropriate public education from June 20, 2005 until November 2007, based on procedural violations, failure to evaluate Kyler in a timely manner, and inadequacies in the special evaluation conducted in the summer of 2007, and inadequacies in the Individual Education Plan (IEP) for the 2007-8 school year. (*See* Exh. "A" Decision and Order, p. 26-27).

12. The IHO ordered that CPS:
   a. Provide Kyler with a private therapeutic day school placement at public expense at Acacia or a similar school;

   b. Provide independent educational evaluations at public expense, including but not limited to psychological assessments of cognitive and academic skills, occupational therapy assessments, and assistive technology assessment, as well as reassessing the nature and extent of student's learning disabilities;

   c. Reimburse the cost of the independent speech language evaluation;

   d. Provide compensatory education services for loss of FAPE during the past two years, including

      i. Additional social work and/or psychological counseling services of 30 mpw (minutes per week) for two years;

      ii. Tutoring by a certified special education teacher at a site selected by the parents for two hours per week for two years;

   e. Convene an IEP meeting and draft an IEP that will consider the full nature and extent of student's disabilities to provide a program of education and related services. (*See* Exh. "A", Decision and Order, p. 26-27).

13. Kyler began attending Acacia Academy, at CPS expense, in December, 2007. (*See* Plaintiff's Complaint, par. 21)

14. An independent neuropsychological evaluation at CPS expense was conducted by Dr. Lisa Stanford, Ph.D. at the University of Illinois Medical Center on or about March 27, 2008. (*See* Exh. "B" Plaintiff's Complaint, par. 22).

15. On January 3, 2008, Kyler, and her guardian, Lojawanna M. through their attorney, submitted an interim claim for attorney fees to Defendant CPS.  The

total amount claimed for representation in the due process hearing through that date is $42,242.28.  (*See* Exh. "B" Plaintiff's Complaint, par. 23).

16. CPS offered to pay Plaintiffs $35,400.00 as attorney's fees, representing all of Plaintiffs' claimed fees except for the fees claimed for attending IEP meetings and related claimed work. CPS advised Plaintiffs that fees for IEP-related activities were expressly barred by the IDEA. Plaintiffs rejected the CPS offer, choosing to litigate over approximately $6,000.00 in claimed fees. (*See* Exh. "C" Board Offer of Judgment; Exh. "D", Plaintiff's Rejection Letter, 3-24-08).

Respectfully submitted,

Patrick J. Rocks
General Counsel

By:   s/James J. Seaberry
James J. Seaberry
Attorney for Defendant Board
Assistant General Counsel
Board of Education of the
City of Chicago-Law Department
125 South Clark Street, Suite 700
Chicago, Illinois 60603
(773) 553-1700