IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KYLER H.,** a Minor, and<br>**LOJWANNA M.,** Individually and<br>as Guardian and Next Friend of **KYLER H.,**<br><br>Plaintiffs,<br><br>v.<br><br>**BOARD OF EDUCATION OF THE**<br>**CITY OF CHICAGO, DISTRICT 299**<br><br>Defendant | 08 C 1125<br><br>Judge Amy St. Eve |

**PLAINTIFFS' RULE 56.1(a)(3) STATEMENT**
**OF MATERIAL FACTS IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs KYLER H., a minor, and LOJWANNA M. in her own capacity and as parent and next friend of KYLER H., by and through their attorney, Michael A O'Connor, hereby submit this Statement of Material Facts in support of their Motion for Summary Judgment, pursuant to Local Rule 56.1(a)(3). Attached are additional documents:

    A. Due Process Decision marked Exhibit A

    B. Attorney fee claim of 1/3/08 marked Exhibit B

    C. Attorney fee claim of 5/16/08 marked Exhibit C

    D. Affidavit of Michael A. O'Connor, marked Exhibit D

    E. Affidavit of Matthew Cohen, marked Exhibit E

    F. Affidavit of Mary E. Moran, marked Exhibit F

    G. Affidavit of Charles Fox, marked Exhibit G

H. Letter of Tracy J. Hamm, CPS counsel to Michael A. O'Connor, Plaintiffs' counsel, dated 7/11/07, marked Exhibit H

## PARTIES

1. KYLER H. is a 9 year-old girl now in third grade. Her school district of residence is Chicago Public School District No. 299. Following a three day due process hearing, KYLER H. prevailed in that an Independent Hearing Officer issued an order which ordered that CPS place her at Acacia Academy, a private therapeutic day school in LaGrange, Illinois. The Hearing Officer also ordered compensatory education services and other relief. KYLER H. brings this action by and through her parent and next friend, LOJWANNA M. (Complaint ¶ 3 and Answer ¶ 3 admits).

2. LOJWANNA M., also brings this action on her own behalf as the prevailing party in the administrative process. She is KYLER M.'s mother, and she resides with KYLER in Chicago, Illinois and within the boundaries of Chicago Public School District No. 299. (Complaint ¶ 4; Answer ¶ 4 admits).

3. Defendant BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299 (Hereafter the Board, or CPS) is the Local Education Agency as defined in 20 U.S.C Sec. 1402 (15) and, as such, is responsible for ensuring the provision of a free and appropriate education to all children residing in the district who, because of their disabilities, have special education needs. (Complaint ¶5; Answer ¶5 admits)

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 20 U.S.C. 1415 (i)(3) (Complaint, ¶ 2; Answer, ¶ 2).

5. Venue is properly in this Court (Complaint, ¶ 2; Answer, ¶ 2).

**FACTS**

6. Kyler was born with the umbilical cord wrapped around her neck; she had left sided weaknesses and developmental delays. She received early childhood services until age 3 on the basis of developmental delay. (Complaint ¶6; Answer ¶ 6 lacks information; see also Due Process Decision, Exhibit A, page 6 at ¶1).

7. Kyler was determined eligible for special education services 2002 and received Early Childhood Special Education Services (ECSE) from September, 2002 until the end of the 2004-5 school year. (Complaint, ¶ 7; Answer, ¶ 7 admits).

8. When Kyler was six years old, in May, 2005, CPS conducted an evaluation, which found that she had low average intelligence, and academic functioning consistent with her cognitive abilities. As a result the IEP team terminated her eligibility for special education services. (Complaint ¶8; Answer ¶8 admits).

9. For the 2005-6 school year, Kyler transferred to Warren Elementary School, where CPS staff placed her in a regular first grade classroom, causing her to skip kindergarten. (Complaint ¶9; Answer ¶9 admits).

10. Kyler did not make academic progress during first grade; progress reports show that she received failing grades in reading, writing, math, science and social studies for most of that time. (Complaint ¶10; Answer ¶10 admits)

11. During second grade, Kyler also experienced academic difficulties, receiving grades of F in reading, spelling, written comprehension, and science. (Complaint ¶11; Answer ¶11 admits)

12. Kyler has had behavioral difficulties since a young age, which have worsened over time. During first grade Kyler was hospitalized at Hartgrove Hospital, a psychiatric facility for children and adolescents, for five weeks, beginning in April, 2006. (Complaint ¶12; Answer ¶12 admits)

13. Kyler's mother requested that CPS evaluate her for a possible learning disability and emotional disorder in May, 2006, April, 2007 and again in May, 2007. After each request, CPS refused to evaluate Kyler. (Complaint ¶13; Decision, Exhibit A at page 7, ¶¶13 and 17)

14. Lojwanna M. retained Mauk & O'Connor, LLP and Michael A. O'Connor to represent them, and on their behalf he requested a due process hearing on June 20, 2007 to redress violations of the Individuals with Disability Act (IDEA) 20 U.S.C. ¶1401 *et seq*. (Complaint ¶14; Answer ¶14 admits parents retained counsel; see also Decision, Exhibit A at page 1)

15. In response to the pending due process hearing, CPS scheduled a special evaluation on July 30, 2007. Kyler was assessed by CPS staff, including an Occupational Therapist, School Social Worker, Speech Language Pathologist and School Psychologist. The evaluations were carried over to August 2, 2007. (Complaint ¶15; Answer ¶15 admits evaluation was scheduled, but denies that it was in response to any act by Plaintiffs; see also letter from Tracy Hamm attached hereto as Exhibit H)

16. An IEP team also convened on July 30, 2007 and again on August 2, 2007. The IEP team determined that Kyler was eligible for special education services, and the IEP team prepared an IEP for Kyler (Complaint ¶16; Answer ¶16 admits).

17. Kyler's mother objected to the adequacy of the evaluations and to the adequacy of services provided in the IEP of August 2, 2007. Plaintiffs' counsel prepared an amended due

4

process complaint reflecting their concerns. (Complaint ¶17; Answer ¶17 admits that Plaintiff objected. Board admits that a complaint was prepared as alleged.)

18. A due process hearing ensued, beginning on October 24, 2007, and continuing on October 25th and October 26th, before an independent hearing officer (IHO) appointed by the Illinois State Board of Education. Following the hearing the IHO issued a decision and order on November 16, 2007 (a copy of the decision is attached hereto as Exhibit A). (Complaint ¶18; Answer ¶18 admits)

19. The IHO found that CPS denied Kyler a free and appropriate public education from June 20, 2005 until November, 2007, based on procedural violations, failure to evaluate Kyler in a timely manner, and inadequacies in the special evaluation conducted in the summer of 2007, and inadequacies in the Individual Education Plan (IEP) for the 2007-8 school year. (Complaint ¶19; Answer ¶19 admits such a finding)

20. The IHO ordered that CPS:

    a. Provide Kyler with a private therapeutic day school placement at public expense at Acacia or a similar school;

    b. Provide independent educational evaluations at public expense, including but not limited to psychological assessments of cognitive and academic skills, occupational therapy assessments, and assistive technology assessment, as well as reassessing the nature and extent of student's learning disabilities;

    c. Reimburse the cost of the independent speech language evaluation;

    d. Provide compensatory education services for loss of FAPE during the past two years, including

       i. Additional social work and/or psychological counseling services of 30 mpw (minutes per week) for two years;

       ii. Tutoring by a certified special education teacher at a site selected by the parents for two hours per week for two years;

    e. Convene an IEP meeting and draft an IEP that will consider the full nature and extent of student's disabilities to provide a program of education and related services. (Complaint ¶20; Answer ¶20 admits such an order was entered)

21. Kyler began attending Acacia Academy, at CPS expense, in December, 2007. (Complaint ¶21; Answer ¶21 admits)

22. An independent neuropsychological evaluation at CPS expense has been scheduled with Dr. Lisa Stanford, Ph.D. at the University of Illinois Medical Center for March 27, 2008. An IEP meeting will be scheduled sometime after that date to consider the report produced by that evaluation. (Complaint ¶22; Answer ¶22 admits)

23. On January 3, 2008, Kyler, and her guardian, Lojawanna M. through their attorney, submitted an interim claim for attorney fees to Defendant CPS (attached hereto as exhibit B). The total amount claimed for representation in the due process hearing through that date is $42,242.28. (Complaint ¶23; Answer ¶23 admits fee claim submitted as alleged)

24. Plaintiffs have incurred, and will incur, additional attorney fees for monitoring compliance with the IHO decision and for attendance at the IEP meeting that will be convened in accordance with the IHO's order. (Complaint ¶24 Answer ¶24 denies; see supplemental invoice attached as exhibit C).

25. Plaintiffs submitted a supplemental fee petition for fees for legal services in connection with the due process proceeding incurred from January 1, 2008 through May 16,

2008.  The amount claimed in the supplemental petition is $5,044.70.00.  The total amount of attorney fees claimed in the initial petition and the supplemental petition is $47,286.98 (Petition attached hereto as Exhibit C; see also affidavit of Michael A. O'Connor, Exhibit D at ¶5).

26. Hourly rate for Michael A. O'Connor in connection with this case was $325 per hour in 2007 and $350 per hour in 2008.  (Affidavit of Michael A. O'Connor, Exhibit D at ¶6). The following range of hourly rates prevail in the Chicago metropolitan area for attorneys representing parents in special education matters:

    a. Senior partners (25-35 years of experience)    $295-350/hr

    b. Associate Attorneys    $145-225/hr

    c. Experienced paralegal    $85-105/hr

See attached affidavit of Michael A. O'Connor (Exhibit D); see also affidavits of Matt Cohen (Exhibit E); Mary E. Moran (Exhibit F); and Charles Fox (Exhibit G).

27. Plaintiffs' counsel, Michael A. O'Connor, has been licensed to practice law since 1970, and he has extensive litigation experience.  Peter Godina has more than 4 years experience as a legal assistant, including 1 ½ years as a legal assistant at the firm of Mauk & O'Connor, LLP for more than one year (Affidavit of Michael A. O'Connor attached hereto as Exhibit D).

                              Respectfully submitted,

May 16, 2008                        /S/Michael A. O'Connor
                                      Michael A O'Connor,
                                      Attorney for Plaintiffs

MAUK & O'CONNOR, LLP
1427 W. Howard St.
Chicago IL 60626-1426
(773)262-2199