**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA P., et al., | ) | |
|         Plaintiffs, | ) | |
| | ) | |
|    v. | ) | No. 05 C 5 |
| | ) | Judge Blanche M. Manning |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO, | ) | |
|         Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Jessica P. is a student of the Chicago public schools. She and her mother have sued under the Individuals with Disabilities Education Act ("IDEA"), *see* 20 U.S.C. § 1415(i)(3), to recover attorneys' fees they expended during their efforts to get the Board of Education of the City of Chicago to accommodate Jessica's needs. The Board, on the other hand, contends that the request for fees is excessive and suggests that it owes the plaintiffs nothing. The parties have filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, plaintiffs' motion for summary judgment is granted, while the defendant's motion is denied.

## I.     FACTS

The following facts are derived from the parties' statements of undisputed facts and accompanying documentary evidence. In 2002, Jessica P. applied to and was accepted as a student at the Chicago Military Academy-Bronzeville, a college preparatory school that includes a mandatory JROTC instructional component. Jessica did not adjust well to her new environment, however, and during her first semester was suspended for a total of 13 days, plus

two Saturday detentions, mostly for conflicts with teachers.  In addition, she was absent 25 days, tardy 32 times, and flunked all her academic courses.

Jessica's disciplinary and academic difficulties worsened during her second semester. She continued failing most of her classes, and faced two expulsion hearings, one for bringing a steak knife to school and one for punching and kicking a staff member.  She was ultimately expelled from the military academy and placed in an alternative high school.

Jessica's mother, Joyce T., did not agree with the school's disciplinary decisions, and requested an impartial due process hearing before an independent hearing officer, as provided by the IDEA.  *See* 20 U.S.C. § 1415(b)(2).  Prior to the hearing, the Board of Education offered to settle.  In its settlement letter dated April 14, 2001, the Board offered to (1) "complete the appeal process to expunge the expulsion from Jessica's record"; (2) place her in a regular high school; (3) conduct a functional behavior assessment; (4) provide Jessica with 30 minutes of additional social work weekly for one year to compensate her for her time at the military academy; and (5) arrange for a tuition waiver for summer school.  The plaintiffs rejected the offer.

At the due process hearing, the independent hearing officer agreed that the Board "did not provide [Jessica] with a free appropriate public education."  The officer ordered the Board to (1) expunge the expulsion from Jessica's record; (2) place Jessica in her home high school; (3) conduct a functional behavior assessment; (4) conduct an education evaluation; and (5) based upon the results of the education evaluation, revise Jessica's individualized education plan and develop a behavioral plan.  The officer also directed the Board to determine what compensatory services Jessica deserved—such as tutoring and extended school year services—and stated that

the Board "should not be limited by the number of hours" of compensatory services requested by the plaintiffs, which was 100.

Following the hearing, the plaintiffs submitted numerous claims to the Board for attorneys' fees and costs due to prevailing parties under 20 U.S.C. § 1415(i)(3)(B). The Board never paid, so the plaintiffs filed this suit seeking $97,101.25 in fees and costs that their attorney charged for representing them at the due process hearing.

The Board does not dispute that the plaintiffs were the prevailing party in the due process hearing, but argues that it is not required th pay the requested fees and costs because (1) most of them were incurred after the Board offered to settle, and the relief that the plaintiffs eventually received was no better than what was offered in the settlement letter; and (2) the number of hours billed was unreasonable.

## II.     RULING ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court should grant summary judgment only when the record shows that a reasonable jury could not find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005).

In deciding a summary judgment motion, the court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Roger*, 424 F.3d at 666-67. The moving party must demonstrate that there is no genuine issue of material fact. *Celotex*, 477 U.S.

-3-

at 323.  It is not sufficient for the non-moving party to merely "show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-moving party must present "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

## III.   ATTORNEYS' FEES UNDER THE IDEA

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B).  However, a prevailing party is not entitled to fees and costs for services performed after a written offer of settlement is made if (1) the offer is made more than ten days before the administrative hearing; (2) the offer is not accepted within ten days; and (3) the relief obtained in the administrative hearing is not more favorable than the offer.  20 U.S.C. § 1415(i)(3)(D).

### 1.     Offer of Settlement

The Board contends that the plaintiffs are not entitled to fees incurred after April 14, 2004, the date of the Board's written offer to settle, because the relief she received during the administrative hearing was no better than what the Board offered.  However, according to the hearing officer's decision and order, the hearing officer awarded relief not part of the Board's written offer.

First, the hearing officer ordered that Jessica's expulsion be expunged from her record. The Board's offer fell short of a guarantee, promising only to "complete the appeal process to expunge the expulsion from Jessica's record."  The Board argues that it would be "ludicrous" to interpret its promise to "complete the appeal process" to be anything other than a guarantee to

-4-

expunge Jessica's expulsion. In support, the Board contends that the plaintiffs' attorney acknowledged in a letter to the Board that "the Board is prepared to expunge [Jessica]'s expulsion." But the attorney's letter predates the Board's written offer, and therefore cannot be referring to the offer to "complete the appeal process," an offer the Board would not make for nearly a week. Furthermore, prior to the Board's written offer, its attorneys advised the plaintiffs that they "do not have the authority to rescind this expulsion." Accordingly, the only reasonable interpretation of the offer is that the Board would allow Jessica to complete her appeal, but that its attorneys lacked the authority to expunge the expulsion themselves.

Second, the hearing officer ordered the Board to conduct an educational evaluation of Jessica and, based upon the results, revise her individualized educational plan and develop a behavioral plan. The Board made no such offer. Nevertheless, the Board contends that the hearing officer's order is not more favorable because the plaintiffs asked for an independent evaluation, but the officer allowed the Board to conduct the evaluation using its own staff. Whether the officer's order is more favorable depends upon how it compares to the Board's offer, not the parent's request. 20 U.S.C. § 1415(i)(3)(D)(i)(III) (fees not reimbursable if "the relief finally obtained by the parents is not more favorable to the parents *than the offer of settlement*.") (emphasis added). The Board did not offer to conduct an educational evaluation or to modify Jessica's individualized educational plan. Therefore, the hearing officer's order requiring it to do so was more favorable that the Board's settlement offer.

Because the plaintiffs received more favorable relief from the due process hearing than the Board proposed in its written offer to settle, the written offer did not terminate the plaintiffs' right to recover fees and costs.

-5-

## 2. Reasonableness Of Fees

The Board contends that the plaintiffs' attorney spent too much time preparing his case, and achieved only minimal success. When determining whether counsel expended a reasonable amount of hours, the court must ensure that counsel exercised proper "billing judgment;" that is, the court may allow only those fees that would normally be billed to a paying client. *Hensley v. Eckerhart*, 461 U.S. 424, 441 (1983). The court will not, however, "eyeball" the fee request and cut it down by an arbitrary percentage, even if the request seems excessive, in the absence of objections stated with particularity and clarity. *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985). While the plaintiffs bear the burden of establishing that their fee request was reasonable, *see Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999), the defendants nevertheless must present evidence that the fees were unreasonable in order to prevail on their motion for summary judgment and survive the plaintiffs' motion, *see Cody v. Harris*, 409 F.3d 853, 860 (7th Cir. 2005).

The Board identifies two primary objections to the hours billed by the plaintiffs' attorney, Michael O'Connor. First, the Board argues that O'Connor billed an excessive amount of time preparing to examine his own witnesses and to cross-examine the Board's witnesses. For instance, O'Connor billed five hours to prepare five witnesses for the first day of the due process hearing, but during the hearing he examined only one of them. Later, he billed eleven hours to prepare to cross-examine witnesses during the second day of the hearing, but cross-examined only three.

The Board has presented no evidence that O'Connor's preparation for questioning and cross-examining witnesses was excessive. Nor has the court found any such evidence in the record. Although O'Connor himself questioned only one of the five witnesses he prepared for the first day of the hearing, the parties agree that O'Connor questioned or cross-examined numerous other witnesses during subsequent days of the hearing, and that, under his supervision, his legal assistant, Sara Mauk, questioned several more. Additionally, there is no evidence to suggest that it was unreasonable for O'Connor to prepare witnesses even if he did not question all of them at the due process hearing. To the contrary, an attorney would be remiss not to interview all possible witnesses, even if the attorney ultimately decides that some of the witnesses' information is irrelevant or disadvantageous.

In all, according to the parties, the due process hearing involved 17 witnesses, including two expert witnesses. In that light, the amount of time O'Connor prepared witnesses that the Board complains about—five hours on one occasion, and eleven hour on another—does not strike the court as being unreasonable or excessive.

 Second, the Board complains that O'Connor and Mauk billed more than 45 hours researching standard issues in IDEA cases even though they both specialize in the IDEA and should already be familiar with standard issues. The court has carefully reviewed the individual entries on the plaintiffs' itemized billing statements. The statements adequately document the legal work performed by O'Connor and Mauk, and reveal that the issues they researched were relevant to the plaintiffs' due process hearing. According to the statements, counsel spent no more than a few hours on each legal issue. Even counsel specializing in a particular area of law could reasonably be expected to spend time familiarizing themselves with recent developments,

Exhibit A-7

or ensuring that no developments had occurred about which they were unfamiliar. Accordingly, the court finds that the few hours O'Connor and Mauk devoted to each of these issues was reasonable and not excessive.

The Board also contends that all of the fees were unreasonable because counsel achieved only minimal success. *See Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996) ("when a plaintiff's success is simply technical or *de minimis*, no fees may be awarded"). But as detailed above, the plaintiffs received substantial relief as a result of the due process hearing, including relief the Board failed to propose in its written offer to settle. Accordingly, counsel's success cannot be characterized as "minimal."

Finally, the Board also contends that the three hours O'Connor spent drafting the plaintiffs' request for a due process hearing was excessive, given that the draft was identical to one O'Connor used in another case. However, the Board's assertion is not supported by citation to the parties' statements of undisputed facts or to any other evidence, as required by Local Rule 56.1. Therefore, the court will disregard the argument.

## IV.    CONCLUSION

Accordingly, having carefully reviewed the request for fees, the itemized billing statements, and the parties' arguments, the court finds that the plaintiffs' requests for fees and costs were reasonable, and awards them to the plaintiffs in the amount of $97,101.25.

ENTER:


DATE:   November 30, 2005

Blanche M. Manning
United States District Judge

-8-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Jessica P., a Minor, and          )
Joyce T. individually and as      )
a Parent and Next Fried of        )
Jessica P.,                       )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    06 C 0002
                                  )
Board of Education of the         )
City of Chicago, District 299,    )
                                  )
          Defendant.              )

## MEMORANDUM OPINION AND ORDER

This action has been instituted by minor Jessica P. and her
mother Joyce T. to enforce, against City of Chicago's Board of
Education District 299 ("Board"), a claim for attorneys' fees and
expenses incurred as the prevailing parties (see 20 U.S.C.
$1425(i)(3)(B))$ in a due process hearing under the Individuals
With Disabilities Act, of which that statutory section is a part.
Board does not challenge either plaintiffs' status as prevailing
parties or their consequent entitlement to an award under the
statute, instead invoking 20 U.S.C. $1425(i)(3)(F)$ and other
reasons to dispute the quantification of that award.

Each side has submitted a Fed.R.Civ.P. ("Rule") 56 motion
for summary judgment, together with the supporting materials
called for by this District Court's LR 56.1, and each has now
responded to the other's motion.  With the issues thus being
rendered ripe for decision, this memorandum opinion and order

Exhibit B-1

addresses each of Board's objections to plaintiffs' request.

There is also no quarrel between the parties as to the operative standards for determining the reasonableness of a fees request, so there is a minimal need to cite any applicable caselaw here. As for the factual background, a copy of the Factual Information section of plaintiffs' responsive memorandum is attached to and incorporated into this opinion.

In the latter respect, it is true that Board has objected to certain portions of plaintiffs' LR 56.1 submission as assertedly not material to the current fees-and-expenses determination, but those matters--which are certainly not outcome-determinative and hence are not potential sources of any genuine issue of material fact that could bar summary judgment--are included solely for informational purposes and do not form part of the gravamen of plaintiffs' claim. Hence Board's motions to strike those matters are denied, but that makes no difference to the outcome. On, then, to the merits.

To begin with, Board does not quarrel with the $295 hourly rate as billed by plaintiffs' experienced counsel, Michael O'Connor. Its general cavil--that Jessica's first and separate due process case resulted in a $97,101.25 award--is as nonmaterial (that is, non-outcome-determinative) as the matters to which Board has itself objected on the ground of materiality. What is relevant instead is whether plaintiffs' substantial claim

2

for the second due process hearing is or is not excessive on its own.

In that regard, Board's first objection is to the inclusion of a charge for travel time of $3,557. But our Court of Appeals made clear over two decades ago that the lost opportunity cost of a lawyer who is compelled to travel to and from a hearing is compensable as part of a fee award (Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984), and that same proposition has been reconfirmed as recently as 2004 (Stark v. PPM Am., Inc., 354 F.3d 666, 673 (7th Cir. 2004). That objection is rejected.

Next Board challenges the expenditure of 12.75 hours labeled "research" as somehow excessive because of its claimed duplication of the research time that had been devoted during the first due process hearing. But plaintiffs' counsel has adequately explained the need for the time involved, as well as the appropriateness of that work having been done by attorney O'Connell rather than by a less expensive paralegal.[1] That

---

[1]Indeed, the "research" label is misleading, for more than half of the 12.75 hours were devoted to the preparation of the second due process request and the preparation of a 20-page post-hearing memorandum, work that was surely appropriate for counsel rather than for a paralegal. And as for the remaining time of less than 6 hours spent in connection with research and preparation on Board's motion to exclude issues, documents and witnesses during the hearing, this Court's own experience as a practioner is that its greater experience and substantially greater efficiency effectively compensated for the time that it would have taken a lower-priced lawyer (let alone a paralegal) to do the same work, especially when the time and cost for the latter is added to the duplicative time and cost that would be

3

challenge is also overruled.

Board's third objection is to the inclusion of billing for the paralegal's time spent during the five day hearing. On that score plaintiffs' R.Mem. 6-7 (also attached) is wholly persuasive. Hence that objection also fails.

Finally, Board objects to the time spent in the review, compilation and cataloguing of records for the second due process hearing--12.25 hours spent by a paralegal and 4.25 hours spent by counsel O'Connell. Once again plaintiffs' counsel answers that objection fully and persuasively. That last objection is turned down as well.

<u>Conclusion</u>

There are no genuine issues of material fact, and plaintiffs are entitled to a judgment as a matter of law. Their request for a full award of $64,284.02 is granted, and judgment is ordered to be entered in plaintiffs' favor and against Board for that amount.

There is one final matter that should be addressed here. As a matter of law plaintiffs--again as prevailing parties--are also entitled to an award of reasonable fees and expenses in this action, but that entitlement does not affect the finality of the judgment ordered here (see <u>Budinich v. Becton-Dickinson & Co.</u>,

---

needed for review of that work by the lawyer who bears the ultimate responsibility for the work product.

4

486 U.S. 196 (1998).  Counsel for the parties are urged to meet
and confer on quantifying that added award, rather than having to
follow the more cumbersome and time-consuming procedure
prescribed by this District Court's local rule on the subject.
That would serve both sides' interests, because it would tend to
minimize the fees-on-fees issue.

Milton I. Shadur
Senior United States District Judge

April 13, 2006.

C:\WPTEXT\JessicaP1.wpd

5

Exhibit F=B

## II.    FACTUAL INFORMATION

The factual information pertinent to this dispute is set forth in detail in the Plaintiffs'
Statement of Uncontested Facts in Support of Plaintiffs' Motion for Summary Judgment.
Defendant has also submitted a Statement of Uncontested Facts in support of it's cross motion, and
Plaintiffs have filed a responsive statement with this memorandum.

In summary, Plaintiff is a 17 year old girl who attends high school in the Chicago Public
School system. She was first determined eligible to receive special education services in April, 2004
based on an emotional behavior disorder (Plaintiffs' Statement of Uncontested Facts, ¶6 [hereafter
Plaintiffs' Statement]). Jessica and her mother have initiated two due process hearings, one in 2004
and the second in 2005 (Plaintiffs' Statement, ¶¶8, 12, 13). Following the first due process hearing,
in a decision issued on August 12, 2004, a hearing officer found that CPS denied Jessica a free and
appropriate public education. The hearing officer ordered that CPS expunge two expulsions from
Jessica's school records, and that CPS conduct a new evaluation to asses whether Jessica has a
learning disability (Plaintiffs' Statement ¶9). In response to the first due process decision, CPS
conducted a second evaluation on August 27, 2004, which determined that Jessica has an emotional
disorder, but not a learning disability (Plaintiffs' Statement, ¶11).

1.    CPS convened IEP meetings on September 14, 2004 and October 15. 2004 which
prepared an Individual Education Program for Jessica. Joyce T. objected to the IEP, and through
her attorney requested a second due process hearing (Plaintiffs' Statement at ¶12). In the second
due process hearing Plaintiffs complained that

   a.  The 8/27/04 evaluation was invalid;
   b.  The behavior intervention plan developed by the IEP team was not
       appropriate and was not properly implemented;

2

c. The IEP team inappropriately failed to offer extended school year and group social work services;

d. The IEP team failed to offer appropriate compensatory services for the denial of a free and appropriate education in the 2002-3 and 2003-4 school years;

e. The IEP's developed in September and October, 2004 were inadequate;

f. Jessica was denied a free and appropriate public education for the 2004-5 school year (Plaintiffs' Statement ¶13).

Prior to the hearing, Hearing Officer Hervey issued a eight page decision denying a motion by Defendant to exclude certain issues, witnesses and documents from the hearing (Plaitiffs' Statement ¶ 14). During the five day hearing, testimony was taken from 23 witnesses, including 8 teachers, 8 expert witnesses, 6 other employees of Chicago Public Schools (CPS) and the parent. 6 of the expert witnesses were called by the parent, and included two clinical psychologists with specialties in pediatric neuropsychology, two professors of special education from National Louis University, a private speech/language pathologist, and Ph.D. level psychoeducational diagnostician (Plaintiffs' Statement at ¶16). Following completion of the hearing, the parties submitted post-hearing memoranda. Plaintiffs' counsel submitted a 20 page memorandum based in part on transcripts of expert testimony at the hearing as well as 699 pages of parent documents. The decision after the hearing was delayed somewhat "due to the number of witnesses and complexity of the exhibits and testimony." (Plaintiffs' Statement at ¶17).

2.      The Hearing Officer issued a 31 page decision on July 5, 2005, which provided substantial relief to Jessica. (see Exhibit A attached to the Complaint). The hearing officer ruled that:

a. The 8/27/04 evaluation was invalid and "should not have been used by the IEP team" (see Exh. A attached to complaint at 21);

b. The behavior intervention plans developed by CPS were not implemented (Exh. A attached to complaint at 22);

3

  c. The JEP developed by CPS was not appropriate as to the determination that Jessica does not have a learning disability and with regard to extended school year (ESY) services (Exh. A attached to complaint at 25);

  d. The IEP team failed to offer appropriate compensatory services (Exh. A attached to complaint at 26)

  e. The IEP developed by CPS in September and October, 2004 did not properly set goals, objectives and present levels of performance for Jessica (Exh. A attached to complaint at 27);

  f. CPS had failed to provide all of the student's records (Exh. A attached to complaint at 27);

  g. CPS failed to provide a free and appropriate education to Jessica for the 2004-5 school year (Exh. A attached to complaint at 27) (Plaintiffs' Statement at ¶18).

The Hearing Officer ordered that CPS

  a. Develop a new IEP using independent evaluations secured by Plaintiffs;

  b. Develop a revised behavior intervention plan;

  c. Provide additional school records;

  d. Offer compensatory services in the form of a two year tutoring mentoring program not to exceed $24,000 in cost, to be paid by CPS. (Plaintiffs' Statement at ¶19).

## III. ARGUMENT

An award of reasonable attorney fees is available to the parent of a child with a disability who is the prevailing party under the Individuals with Disability Act, 20 U.S.C. §1415(d)(3)(B); 34 C.F.R. §300.513. Courts have generally applied the principles and standards applicable to fee awards under §1988 to cases involving fee requests under IDEA. *See, e.g., Holmes v. Millcreek Tp. Sch. Dist.*, 205 F.3d 583, 593 n. 12 (3d Cir. 2000); *Kathleen H. v. Massachusetts Dep't of Educ.*, 154 F.3d 8, 14 (1st Cir. 1998); *Jodlowski v. Valley View Community Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 n. 2 (7th Cir. 1997).

4

Exhibit B-8

B. Research

Defendant objects to 12.75 hours attorney time billed for research, apparently on the basis that the second hearing was a routine repetition of the first hearing, and that Plaintiffs billed 45.25 hours for research in the first hearing.[1] While there may have been some overlap among the issues raised in the two separate hearings, they occurred about one year apart. Moreover, in the second hearing defendant filed a motion to exclude issues, documents and witnesses, which consumed 5.75 hour of research time (See Plaintiffs' Response to Defendant's Statement of Uncontested Facts. ¶11 [hereafter Plaintiffs' Response]). 3.5 hours were billed at the outset of the second case, in connection with research and drafting the second due process request (*id*). The remaining 3.5 hours research time were related to preparation of a 20 page post hearing memorandum (*id*). All in all, Plaintiffs' counsel billed a remarkably limited number of hours for research given the complexity of the case. Defendant's contention that all time for research be disallowed should be rejected.

C. Paralegal as second chair at trial

Defendant also objects to billing for paralegal time during the five day hearing. Having a second attorney at a trial to assist with note taking, monitoring order of proof and otherwise assist the lead trial attorney is not unreasonable, given the complexity of the due process hearing, which heard 23 witnesses, including 8 expert witnesses, and involved 699 pages of parent documents (Plaintiffs Statement at ¶17). The hearing officer issued a 29 page decision, which she explained was delayed in part "due to the number of witnesses and the complexity of the exhibits and testimony. The need for backup assistance during trial has been recognized in other contested fee cases: " as most trial lawyers know, it is essential to have a second lawyer at

---

[1] Defendant contested plaintiffs' fees in the first hearing in *Jessica P. vs. Board of Education*, 05 C. 0002. Judge Manning ruled that Plaintiffs' fees in the first hearing were fully compensable. See decision and minute order attached as Exhibts A and B to Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment.

6

counsel table, especially in a 6-day trial, to take notes, confer with the client while lead counsel is questioning witnesses, and maintain an overview of all the proceedings. *Zojourner v. Brown*, 2005 U.S. Dist. LEXIS 19995 (D.D.C. 2005). See also, *Hector Gonzalez v Puerto Rico Department of Education*, 1 F. Supp. 2d 111 (D PR. 1998) where the court upheld fee award for second attorney at a four day due process hearing. In the instant case, reliance on a paralegal should be commended, and the paralegal time spent at the hearing should be fully compensated.

### D. Review of Records

Defendant further objects that plaintiffs counsel improperly billed time for review, compiling, and cataloging records. The Parent documents in the second due process hearing consisted of 699 pages (Plaintiffs' Statement at ¶17. Plaintiffs billed a grand total of 16.5 hours in connection with review, compiling and cataloging documents, of which only 4.25 hours were billed by an attorney. The remaining 12.25 hours were billed by a paralegal (Plaintiffs' Response at ¶ 16). Defendant's objection to this time appears to be based on the fact that a prior hearing a year earlier, involving the same parties, Plaintiffs' counsel billed 12 hours for document review in the first hearing, but the second hearing, while involving some documents from the first hearing, clearly addressed numerous documents generated after the first hearing was completed, including IEP's, evaluations, behavior intervention plans, etc. (Plaintiffs Response,¶ 7). Moreover, document review activities occur at multiple points in a case, ranging from intake, filing a due process request, responding to motion to exclude, preparing for hearing, and preparing a post hearing memorandum. On balance, plaintiffs billing should be found to be modest and eminently reasonable rather than excessive. There should be no basis for excluding these charges in their entirety.

7

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 142 | **DATE** | 6/1/2006 |
| **CASE TITLE** | A, et al vs. Board of Education of the City of Chicago | | |

DOCKET ENTRY TEXT

The Court grants Plaintiffs' motion for summary judgment, (R. 16), and denies Defendant's motion for summary judgment. (R. 19.) Plaintiffs may recover $31,335.30 in attorneys' fees.

■[ For further details see text below.]

Notices mailed by Judicial staff.
*Mail AO 450 form.

---

### STATEMENT

Jason A. ("J.A.") and his mother Nelly A. ("N.A.") (collectively, "Plaintiffs"), brought this suit to recover $31,335.30 in attorneys' fees from the Board of Education of the City of Chicago ("Defendant") pursuant to 20 U.S.C. § 1415(i)(3).[1] Before the Court are cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons set forth below, the Court grants Plaintiffs' motion for summary judgment, and the Court denies Defendant's motion for summary judgment.

### BACKGROUND

#### I. The Parties

J.A. was a five year old boy when Plaintiffs filed the Complaint on January 11, 2006. (R. 17-1; Pls.' Stmt. of Material Facts ("Pls.' SMF") at ¶ 1.) He was eligible for special education due to autism and a communication disorder. (*Id*. at ¶¶ 1, 6.) He resides in Chicago Public School District No. 299. (*Id*. at ¶ 1.) N.A. is J.A.'s mother, and she brings this suit on behalf of herself and J.A. (R. 21-1; Def.'s Stmt. of Material Facts ("Def.'s SMF") at ¶ 3.) Defendant is a local education agency and is responsible for providing a free and appropriate education to all children residing in District No. 299 who have special education needs because of a disability. (R. 17-1; Pls.' SMF at ¶ 3.)

#### II. June 2005 Individualized Education Program

In January 2005, J.A. attended a full-day blended pre-kindergarten program. (*Id*. at ¶ 6.) A "blended" classroom has both a traditional education teacher and a special education teacher for approximately fifteen non-disabled students and five students who are eligible for special education services. (*Id*.) It is undisputed that J.A. did well in this blended classroom. (*Id*.) In June 2005, Defendant prepared an individualized education program ("IEP"), which stated that J.A. should be placed in a self-contained classroom. (*Id*.) A self-contained classroom, in contrast to a blended classroom, only has students who are eligible for special education services. (*Id*.)

#### III. Administrative Hearing

---

# STATEMENT

On December 9, 2004, Plaintiffs requested an impartial due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et sec*. (R. 21-1; Def.'s SMF at ¶ 5.) On June 7, 2005 and September 13, 2005, Defendant made written settlement offers to Plaintiffs in an attempt to resolve the dispute. (*Id*. at ¶ 6.) Specifically, it offered to: (1) pay Plaintiffs for a portion of the services J.A. received at the Puentes Program at Illinois Masonic Hospital; (2) reimburse Plaintiffs in the amount of $1,050 for the tuition-based preschool program at the Alcott School; (3) conduct a functional analysis and an occupational therapy assessment of J.A.; and (4) reconvene an IEP meeting to review assessments and revise the IEP if necessary and/or revisit J.A.'s related services and the need for a behavior intervention plan. (*Id*.) (R. 27-1; Pl.'s Resp. to Def.'s SMF at ¶ 6.) Plaintiffs rejected Defendant's settlement offers, and a due process hearing took place on September 22, 23, 27, and 30, 2005. (R. 21-1; Def.'s SMF at ¶ 7.)

The parties agree that the September 2005 hearing addressed issues including: (1) whether Defendant failed to provide an appropriate placement for J.A. to begin the 2004-2005 school year; (2) whether Defendant offered an appropriate placement for J.A. for the 2005-2006 school year; (3) whether Defendant denied J.A. a free and appropriate public education during the 2003-2004 school year; and (4) whether Plaintiffs were entitled to compensatory services, payment for services at the Puentes Program, reimbursement for tuition-based program, and payment for outside evaluations. (R. 17-1; Pls.' SMF at ¶ 7) (R. 25-1; Def.'s Resp. to Pls.' SMF at ¶ 7) (R. 21-1; Def.'s SMF at ¶ 8.) The independent hearing officer, who presided over the due process hearing, ordered that: (1) Defendant develop an appropriate placement for J.A. in a regular full-day kindergarten classroom, and conduct an IEP within thirty days; (2) the parties consider appropriate ways to address the question of compensation for when J.A. was not in school during the 2004-2005 school year, and address whether a behavioral intervention plan is needed; (3) payment for the Puentes Program is denied; (4) reimbursement of tuition for the preschool program is upheld; (5) Defendant conduct an Occupational Therapy evaluation; and (6) reimbursement for outside evaluations is denied. (R. 1-1; Compl., Ex. A at A-6.) Defendant does not dispute that Plaintiffs were the prevailing party in the administrative process. (R. 25-1; Def.'s Resp. to Pls.' SMF at ¶ 2.)

# ANALYSIS

## I. Legal Standards

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Id.* at 255, 106 S. Ct. at 2513. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

These "principles apply to cross-motions for summary judgment just as they would to a garden-variety summary judgment motion." *Steinberg v. Railroad Maint. and Indus. Health and Welfare Fund*, No. 03-4539, 2004 WL 1151619, at *2 (N.D. Ill. Apr. 13, 2004) (citing *International Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). That is to say, "the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 991 (N.D. Ill. 2003). Because "each motion must be assessed independently [ ] denial of one does not necessitate the grant of the

# STATEMENT

other." *Local 710 I.B.T. Pension Fund v. United Parcel Serv., Inc.,* No. 02-4420, 2004 WL 2403123, at *3 (N.D. Ill. Oct. 26, 2004) (citations omitted). With these standards in mind, the Court turns to the merits of the parties' motions.

## II.    Attorneys' Fees

Both parties move for summary judgment on the issue of attorneys' fees. The IDEA states that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B); *see also Schaffer v. Weast*, – U.S. –, 126 S. Ct. 528, 532-33, 163 L. Ed. 2d 387 (2005) ("Prevailing parents may . . . recover attorney's fees."); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) ("the IDEA does allow fees to the prevailing party in administrative hearings").

### A.    Prevailing Party

As an initial matter, Plaintiffs cannot recover attorneys' fees pursuant to Section 1415(i)(3)(B) unless they are the prevailing party. "[A] plaintiff may be considered a 'prevailing party' if 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *T.D.*, 349 F.3d at 479 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983)) (internal quotations omitted). "A prevailing party, to be classified as such, therefore 'must obtain at least some relief on the merits of his claim.'" *Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 (7th Cir. 1997) (citing *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992)).

Here, Defendant does not contest that Plaintiffs are the prevailing party. (R. 25-1; Def.'s Resp. to Pls.' SMF at ¶ 2.) Indeed, at the administrative hearing, the hearing officer ordered, among other things, that: (1) Defendant develop an appropriate placement for J.A. in a regular full-day kindergarten classroom; (2) the parties consider appropriate ways to address the question of compensation for when J.A. was not in school during the 2004-2005 school year; (3) reimbursement of tuition for the preschool program is upheld; and (4) Defendant conduct an Occupational Therapy evaluation. (R. 1-1; Compl., Ex. A at A-6.) Such a result is sufficient to establish that Plaintiffs are the prevailing party. *See, e.g., T.D.*, 349 F.3d at 479-480 (finding that T.D. was the prevailing party where "T.D. did not succeed on every issue at the due process hearing, [but] he did prevail on certain significant issues and achieved at least some of the benefit he sought").

### B.    Defendant's Settlement Offers

Defendant argues that Plaintiffs cannot recover attorneys' fees because they rejected Defendant's "settlement offer and received substantially less from the due process hearing decision." (R. 20-1; Def.'s Mem. in Supp. of Mot. for Summ. J. at 5.) Section 1415(i)(3)(D) prohibits the award of attorneys' fees and related costs for services performed after receipt of a written offer if: (1) the offer is made over ten days before the start of the administrative proceeding; (2) the offer is not accepted within ten days; and (3) "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i). There is one exception to this prohibition, "an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." 20 U.S.C. § 1415(i)(3)(E).

Here, it is undisputed that Defendant made a settlement offer to Plaintiffs on June 7, 2005, well over ten days before the start of the administrative hearing, and that Plaintiffs did not accept that offer within ten days. The parties, however, contest whether the relief Plaintiffs received from the hearing was more favorable than Defendant's settlement offer. Defendant argues that the hearing officer awarded Plaintiffs less than Defendant offered Plaintiffs because the hearing officer denied their request for payment for the Puentes Program, while Defendant included partial payment for that program in its settlement offer. Additionally, Defendant offered to conduct a functional analysis, but the hearing officer did not address this issue.

## STATEMENT

Defendant, however, concedes that the hearing officer ordered it to develop an appropriate placement for J.A. in a regular full-day kindergarten classroom, and that Defendant's offer did not contain such relief. Further, Defendant's offer did not directly address compensation for time that J.A. was not in school during the 2004-2005 school year, while the hearing officer directed the parties to consider appropriate ways to address this issue. Beyond these specific areas, Defendant's settlement offer substantially corresponded with the hearing officer's award.

Although the hearing officer's award denied Plaintiffs some relief that Defendant's offer contained, that award was more favorable than Defendant's offer because the hearing officer ordered Defendant to place J.A. in a full-day blended kindergarten classroom. Placement in a blended kindergarten classroom comports with the least restrictive environment ("LRE") provision of the IDEA, which states that

> [t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A); *see also Beth B. v. Van Clay*, 282 F.3d 493, 498 (7th Cir. 2002) ("children may not be removed from the regular classroom unless their education there . . . cannot be achieved satisfactorily").

Moreover, the hearing officer's findings in her written decision and order explain the importance of J.A.'s placement in a blended classroom. The opinion states that

> the last agreed upon IEP placed [J.A.] in a blended pre-K classroom and staff attested to the fact that he had made progress in that setting. One of the parent's witnesses was surprised at how well the child behaved in her office for the evaluation and was amazed at the progress he had made. The fact that the District does not have a full-day blended kindergarten class at this time does not change the process for determining what a specific student requires. In a blended classroom, [J.A.] would have access to non-disabled peers. This is a critical time for language development and social interaction. The placement should maximize his exposure. . . . Further, the Seventh Circuit Court of Appeals has upheld the doctrine that progress is a key consideration in determining the appropriateness of a least restrictive environment.

(R. 1-1; Compl., Ex. A at A-5.) Accordingly, Defendant's settlement offer does not prevent Plaintiffs from recovering attorneys' fees pursuant to § 1415(i)(3)(D)(i) because the relief Plaintiffs received at the due process hearing was more favorable than the relief Defendant previously offered them.[2] *See Mrs. M. v. Tri-Valley Central Sch. Dist.*, 363 F. Supp. 2d 566, 572 (S.D.N.Y. 2002) (holding that plaintiff was not barred from recovering attorneys' fees because prior settlement offer provided slightly less relief than final award). Moreover, even if the relief Plaintiffs received from the hearing was not more favorable than Defendant's settlement offer, Plaintiffs may still recover their attorneys' fees because they were "substantially justified" in rejecting a settlement offer that did not provide for placing J.A. in a full-day blended kindergarten classroom. *See* 20 U.S.C. § 1415(i)(3)(E); *see also Mr. & Mrs. S. v. Timberlane Reg'l Sch. Dist.*, No. 03-260, 2004 WL 502614, at *5 (D.N.H. Mar. 15, 2004) (holding that the parents were entitled to recover attorneys' fees where they "were substantially justified in rejecting an offer that was only one third of the fees and costs they had incurred at that time").

**C.     Reasonable Attorneys' Fees**

The Court "has discretion in determining the amount of a fee award." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S. Ct. at 1939. Here, Defendant does not contest the hourly rates Plaintiffs' counsel claim. The Court also finds Plaintiffs' counsel's billing rates reasonable based on their affidavits. Defendant does, however, raise three

**STATEMENT**

challenges to the number of hours of billable work for which Plaintiffs seek recovery. First, Defendant argues that the Court should dramatically reduce or deny entirely Plaintiffs' fee petition because of their purported lack of success. Second, Defendant advocates reducing Plaintiffs' attorneys' fees award by $1,500 for travel time to and from the due process hearing and the subsequent IEP meeting. Third, Defendant asserts that the Court should reduce Plaintiffs' award by an additional $1,700 for time spent researching and drafting a "stay-put" motion.[3]

**1.      Degree of Success**

Defendant argues that "plaintiffs' fee petition is not reasonable in relationship to their degree of success so should be reduced dramatically, if not denied in its entirety." (R. 20-1; Def.'s Mem. in Supp. of Mot. for Summ. J. at 8-9.) Although "'the degree of the plaintiff's success does not affect eligibility for a fee award,'" "the plaintiff's degree of success does impact the reasonableness of a fee award, and '[i]n some circumstances, even a plaintiff who formally prevails . . . should receive no attorney's fees at all.'" *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996) (citing *Farrar*, 506 U.S. at 114-15, 113 S. Ct. at 574-75) (internal quotations omitted) (emphasis in original omitted). The Supreme Court has explained that

> [w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley*, 461 U.S. at 440, 103 S. Ct. at 1943.

In this case, Plaintiffs did not achieve complete success on the claims they asserted at the due process hearing. Plaintiffs were successful in obtaining an order requiring Defendant to place J.A. in a full-day blended kindergarten classroom, directing the parties to consider compensation for the period of time during the 2004-2005 school year that J.A. was not in school, and awarding reimbursement of tuition for the preschool program. The hearing officer, however, denied Plaintiffs' related claims for reimbursement for the Puentes Program and for outside evaluations. Although Plaintiffs did not achieve complete success, they did achieve "substantial relief." *See id.* Moreover, the Court has reviewed Plaintiffs' counsel's billing records and the hours counsel billed are reasonable in light of the success that they achieved. Accordingly, the Court will not reduce the award of attorneys' fees based on Plaintiffs' less than complete success. *See, e.g., Mr. & Mrs. S.*, 2004 WL 502614, at *7 ("The issues on which they were partially successful are intertwined with the parts in which they were not successful, so that it is not possible or necessary to parse their attorneys' efforts between successful and unsuccessful claims."); *Gross v. Perrysburg Exempted Vill. Sch. Dist.*, 306 F. Supp. 2d 726, 742 (N.D. Ohio 2004) (denying defendant's request to reduce plaintiff's fee award due to only partial success where plaintiff achieved her "central goals" in bringing her IDEA case).

**2.      Travel Time**

Defendant further asserts that the Court should reduce Plaintiffs' attorneys' fees award by $1,500 for the travel time Plaintiffs' counsel billed for attending the due process hearing and the subsequent IEP meeting. The Seventh Circuit, however, has recognized that the presumption "should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time." *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984); *see also Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) ("travel time and expenses are compensable"); *In re Maurice*, 69 F.3d 830, 834 (7th Cir. 1995) ("Attorneys customarily charge their clients for time on an opportunity-cost basis. Statutes authorizing compensation for attorneys' fees therefore permit compensation for travel time."). Here, Defendant does not argue that Plaintiffs' counsel charged excessive time for travel, nor does it argue that it was unnecessary for Plaintiffs' counsel to travel to the due process hearing or to the subsequent IEP hearing.

## STATEMENT

Therefore, the Court will not subtract Plaintiffs' attorneys' travel time from the fee award.

      **3.    Fees for "Stay-Put"**

      Lastly, Defendant contends that Plaintiffs cannot recover $1,700 for attorneys' fees incurred in researching and drafting a pre-hearing motion for a "stay-put" because the hearing officer never ruled on this motion.[4]  The "stay-put" provision of the IDEA states:

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

      In this case, after Defendant offered to place J.A. in a half-day blended classroom during the pendency of the due process hearing, Plaintiffs filed a motion for a "stay-put" order directing placement of J.A. in a full-day program.  (R. 27-1; Pls.' Resp. to Def.'s SMF at ¶ 17.)  During telephone conferences with the hearing officer, the parties subsequently agreed to place J.A. in a blended classroom with morning and afternoon sessions.  (*Id*.)  The hearing officer ultimately ordered that Defendant develop an appropriate placement for J.A. in a full-day blended classroom.  (R. 1-1; Compl., Ex. A at A-6.)  Because "the imposition of the stay-put placement . . . is part of the administrative hearing," *Board of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000),[5] and Plaintiffs are the prevailing party, they are entitled to attorneys' fees incurred in researching and drafting the "stay-put" motion.

## CONCLUSION

      For these reasons, the Court grants Plaintiffs' motion for summary judgment, and denies Defendant's motion for summary judgment.  Plaintiffs may recover $31,335.30 in attorneys' fees.

---

1. Although this case initially involved other plaintiffs, they purportedly settled with Defendant. Accordingly, the Court addresses only J.A.'s and N.A.'s claims.

2. Defendant asserts that "[w]ithout a finding that the Board denied [a free appropriate public education] or violated *Rowley*, plaintiffs did not receive substantial relief from the due process hearing."  (R. 24-1; Def.'s Opp'n to Pls.' Mot. for Summ. J. at 3.)  Defendant, however, waives this argument by not developing it or supporting it with legal authority.  *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."); *see also United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[w]e repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

3. Defendant also argues that the Court should reduce Plaintiffs' award because they and/or their attorney "unreasonably protracted the final resolution of the controversy," 20 U.S.C. § 1415(i)(3)(F)(i), by not accepting Defendant's settlement offer.  Because Plaintiffs were substantially justified in rejecting Defendant's offer, they did not unreasonably protract the resolution of this matter in doing so.

4. In support of this argument, Defendant relies on *T.D.*, which held that *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603-04, 121 S. Ct. 1835, 1839-40, 149 L. Ed. 2d 855 (2001), is applicable to the IDEA.  *T.D.*, 349 F.3d at 478.  "*Buckhannon* held that to be a 'prevailing party,' a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief."  *Id*. (citing *Buckhannon*, 532 U.S. at 603-04, 121 S. Ct. at 1839-40).  *T.D.*, however, is distinguishable from

Case 3:06-cv-02542 Document 273 Filed 06/06/2008 Page 25 of 34

this case because in *T.D.*, the parties ultimately resolved the merits of the case through settlement. 349 F.3d at 478.

5. This case is distinguishable from *Nathan R.* and *Board of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L.*, 89 F.3d 464, 469 (7th Cir. 1996), because in *Nathan R.* and *Steven L.*, unlike in this case, the prevailing party analysis only addressed the invocation of the "stay-put" provision.

7

Exhibit C-7

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 0302 | **DATE** | 3/2/2007 |
| **CASE TITLE** | Eric A. *et al.* vs. Board of Education of the City of Chicago, District 299 | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion for summary judgment is granted in part and denied in part. [20] Plaintiff is awarded $26,718.21 in fees and costs, which represents 75% of the $35,624.28 amount he requested.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Before the court are cross motions for summary judgment filed by plaintiff Eric A, who is represented by attorney Michael A. O'Connor, and by defendant Board of Education of the City of Chicago, District 299 (the "Board"). At issue is whether plaintiff Eric A. should recover $35,624.28 in attorneys' fees and costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3) relating to the effort to get more special education services for Eric who at this time was a rising eighth grader. (The other plaintiffs have settled their claims for fees.) Counsel for both sides are experienced in these cases and have adequately set forth the general legal framework. The facts are also largely undisputed. Therefore, we will only set forth the facts necessary to explain this ruling.

**Facts.** The following facts are taken from the parties' statement of facts and are undisputed. In 2001, Eric was determined eligible for special education services to address a learning disability and speech language difficulties. In 2003 and 2004, the school developed an Individualized Education Plan ("IEP") for Eric. Following the 2004 IEP meeting, Eric's parents arranged for counseling for Eric to address lack of self confidence and social skills and that counselor referred the parents to Dr. Rosen, a pediatric neuropsychologist. In spring 2005, Dr. Rosen evaluated Eric over several days and found that, although Eric was functioning overall within the average range of intellectual ability, he had some significant problems in "receptive and expressive language, word retrieval, oral expression and pragmatic skills." Eric's parents then retained attorney O'Connor who, on April 25, 2005, requested an impartial due process hearing pursuant to the IDEA. Plaintiff requested that the Board: (a) provide a copy of relevant school records; (b) pay for placement at a private therapeutic day school such as Cove School in Northbrook, Illinois; (c) pay for the neuropsychological evaluation by Dr. Rosen; (d) provide accelerated and intensive assistive technology support; and (e) convene an IEP meeting to implement relief. In June 2005, the Board filed a motion to compel an IEP meeting. The motion was granted by the hearing officer. The IEP meeting took place on August 15, 2005, and the school developed a "new significantly altered IEP, in large part in response to Dr. Rosen's report and evaluation." The IEP required, among other things, an assistive technology assessment.

## STATEMENT

On August 16, 2005, a four day due process hearing was held before an independent hearing officer appointed by the Illinois State Board of Education. On September 16, 2005, the hearing officer issued a 10-page "Decision & Order." That order, which this Court has reviewed carefully, contains many observations and findings. But the highlights are as follows. First, the officer refused to order placement in the private day school, finding that the "last minute IEP meeting held on August 15, 2005 . . . is comprehensive." Second, the officer found that "inadequacies in the previous IEP's in question merit compensatory services." Third, the office did not find that Eric was denied a free and appropriate education. Fourth, the officer ordered the Board to pay for the cost of Dr. Rosen's evaluation and ordered the IEP team to convene a meeting within 15 days to discuss compensatory services including the use of assistive technology. That meeting was held on September 28th and the parties agreed in that meeting that Eric would receive textbooks on tape or compact discs, educational software for use at home, counseling, and after school tutoring. The Board now challenges the request for fees, raising specific and general objections.

**Specific Objections**. The Board objects to the reasonableness of several specific fees such as fees for a paralegal who attended the hearing, travel costs, photocopying expenses, certain time entries for attorney O'Connor that are allegedly improper "block billing," and fees for attending the IEP meeting on August 15th. These objections altogether amount to only a relatively small portion of the overall fee being sought. After reviewing these arguments, we find that they have no merit. Several of them have been resolved through the course of the briefing. For example, the Board objected in its opening brief that the photocopying expenses were not sufficiently described or documented so that the Board could determine whether these expenses were reasonable and necessary. In his response brief, plaintiff responded by providing further documentation and a line-by-line explanation of each expense, a response which has now satisfied the Board. The Board also wisely dropped its objections to plaintiff's use of a paralegal at the four-day hearing given that the Board used *two attorneys*. We are not persuaded that the two "block billing" entries are improper because these entries really focus each on one activity. *See* Pl. Resp. at 10 (further explanation). As for the fees for attending the August 15th IEP meeting, the Board says they are not recoverable because the meeting was not held as the result of an order of the hearing officer. *See* 20 U.S.C. § 1415(i)(3)(D)(ii). Plaintiff responds that the hearing officer did enter an order in response to the Board's motion to compel in June 2005. Defendant seems to regard this order as insufficient but we are not clear why and defendant has not provided any cases to support its argument. Therefore, this objection is not fully developed and is denied.

**General Objections.** The primary focus in the briefs is on the Board's two general objections, both of which are variations on the same theme that plaintiff failed to achieve his major objective and thus his fees should be greatly reduced if not denied entirely. The Board first argues that plaintiff has not shown that he is a "prevailing party" and therefore cannot recover any fees. The Board next argues that, even if he is a prevailing party, this Court should exercise its discretion to reduce that award by 75% to account for the lack of success. Both arguments rest on the Board's view that plaintiff's recovery was *de minimis* largely because he was denied the request for placement in the private school. More specifically, the Board analyzes the issues in terms of the four requests that plaintiff made at the hearing (for the cost of private school, payment for Dr. Rosen, assistive technology, and to convene an IEP meeting to implement the above) and claims that he achieved only one of the four (payment for Dr. Rosen). Hence, he should recover 25% of the requested fees. We address each of these arguments below.

1.     **Was Plaintiff A Prevailing Party?** The parties agree that, to be a prevailing party, plaintiff "must obtain at least *some relief* on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (emphasis added). And there is no real question here that plaintiff obtained some relief; the only question is whether it was enough to meet this standard. As the Supreme Court has indicated, the prevailing party inquiry "does not turn on the magnitude of the relief obtained." *Id.* at 114; *see also T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) (explaining that the prevailing party standard is a "generous" one: "while T.D. did not succeed on every issue at the due process hearing, he did prevail on certain significant issues and achieved at least some of the benefit he sought"). Based on these cases, as well as the others cited

# STATEMENT

in the briefs, we find that plaintiff did achieve enough success to meet this generous standard. He received payment for Dr. Rosen's evaluation and the officer ordered the parties to meet and discuss the assistive technology, which in turn led to the provision of software, special textbooks, and counseling. He also achieved other changes through the August 15th meeting, which was held after he initiated the due process hearing. This constitutes "some" of the benefits he sought. *Id.* The Board relies heavily on the Seventh Circuit's decision in *Monticello School Dist. No. 25 v. George L*, 102 F.3d 895 (7th Cir. 1996). In that case, the district court denied *all* fees because it believed that the plaintiff, even though achieving some changes in the student's program, nonetheless only brought about *de minimis* changes. In affirming that ruling, the Seventh Circuit stated that it was a "close question" whether the district court should have denied all fees but concluded that, in light of the abuse of discretion standard, it could not overturn that ruling. *Id.* at 908. Given this deferential standard of review, the *Monticello* case thus provides only limited guidance here. *See also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 551 (7th Cir. 1999) ("the views of the district court are given great deference").

      **2.    Should We Reduce The Fees For Partial Success?**  A finding that plaintiff is a prevailing party does not end the inquiry into the degree of plaintiff's success because the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) specifically stated that a district court may reduce the lodestar amount (reasonable hours times reasonable rate) to account for lack of success. At issue here is whether we should make a reduction and, if so, how much. As noted above, the Board argues that we should award only 25% to account for success on only one out of four of the requested items of relief. Plaintiff responds by arguing that he achieved three out of four of his objectives and that he has thus achieved a "substantial" victory, which in turns means that he should get the full award. To support this theory, plaintiff cites to two district court cases -- one from this district and one from Ohio -- in which the court refused to reduce the requested award even though the plaintiff failed to achieve some of his objectives. *See Gross v. Perrysburg Exempted Village School Dist.*, 306 F.Supp.2d 726, 732 (N.D. Ohio 2004) ("Where they have gained much that they sought, parents should not be decreed to have failed because their grasp did not match their reach."); *Poynor v. Community Unit School District # 300*, 1999 WL 1101566 (N.D. Ill. Nov. 30, 1999) (J. Gettleman). Plaintiff also objects to the general approach of reducing fees by a percentage amount. Relying on a phrase in Judge Gettleman's decision in *Poynor*, plaintiff states that a percentage reduction would be "a mindless application of mathematics to a qualitative inquiry." *Id.* at *1. To support this same theory, plaintiff also relies on the following passage from the Supreme Court's decision in *Hensley*:

> Where the plaintiff has failed prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. at 440. Plaintiff's theory thus seems to be that, although he did not prevail on his request for placement in a private school, this request was intertwined with his other claims and he achieved significant overall success.

    In assessing these arguments, we must first address the dispute over whether plaintiff achieved success on one out of four claims, as the Board maintains, or on three out of four, as plaintiff argues. The Board places much weight on the fact that the hearing officer did not specifically order the school to provide assistive technology but merely ordered the parties to meet on the issue. However, given that the school did later provide this technology as a result of being ordered to meet and discuss the issue, we find that this is close enough. In sum, on this point, we find that plaintiff's arguments are more convincing.

## STATEMENT

Based on the assumption that plaintiff did prevail on three of his four requests, we must assess plaintiff's argument that a 75% victory is substantial enough that he should get *all* of his fees. We are not persuaded by this argument. Neither *Hensley* nor *Farrar* provide clear authority for this approach. In fact, both decisions indicate that a court clearly has the discretion to reduce fees for partial success. In *Farrar*, the Supreme Court specifically stated that a district court should compare the "amount of damages *awarded* as compared to the amount *sought*." 506 U.S. at 114 (emphasis added) (quoting *Riverside v. Rivera*, 477 U.S. 561, 585 1986)). Although the passage from *Hensley* quoted above might be read to provide indirect support for plaintiff's argument, it contains the qualification that the unsuccessful issue must not be distinct from the successful ones. Here, the request for placement in the private school was distinct in many respects from the other requests in that it would have resulted in a significantly different approach, a new school taking control over everything, whereas all the other issues were smaller in scope and amount and related to maintaining an ongoing relationship with plaintiff's current school. Those are two different approaches and thus suggest that the private school request was distinct in some respects. As for the two district court cases plaintiff relies upon, they also do not provide strong support for his argument. This is because, in both cases, the attorneys seeking fees made an effort in their fee petition to first subtract out those fees related to the unsuccessful requests. In *Gross*, the Ohio district court explicitly stated that plaintiff's counsel has "a duty to make a good faith effort to exclude from a fee request hours that were spent working on an unsuccessful claim." 306 F.Supp.2d at 740, 741 ("counsel has made an effort to expunge fees associated with plaintiff's request for a transfer to the alternative school"). Similarly, in *Poynor*, the plaintiffs' attorney also reduced his fee to account for the losing claim. Specifically, counsel incurred $102,408.75 in fees but only requested $63,712.75 because he subtracted out the amount representing the losing claim. 1999 WL 1101566, *1. Judge Gettleman stated that counsel's reduction of fees to reflect time spent only on "successful claims" was "a welcome and professional effort to be realistic about fee requests under the IDEA." *Id.* at * 2. In contrast here, plaintiff's counsel has made no such effort.

Proceeding then on the conclusion that the fees should be reduced to account for the failure to achieve success on the private school placement issue, we must decide by how much. One approach would be to follow the Board's recommendation but rather than subtracting 75% from the award, to only subtract 25%. Plaintiff, however, has stated that a percentage reduction is a "mindless" application of mathematics. But the only other alternative we can envision would be to look at specific time entries and determine from them what portion was spent on the unsuccessful request In reviewing counsel's time sheets, however, there is not enough information to make such a determination. And counsel has not come forward with any explanation even though he could have done so just as he did when the Board raised objections to his attempt to recover certain photocopying expenses. Because counsel has elected not to come forward with any further explanation and because the Supreme Court has admonished that "[a] request for attorney's fees should not result in a second major litigation," *see Hensley*, 461 U.S. at 437, we find that a 25% reduction to account for the failure to achieve one out of the four requested items is a reasonable and fair result. We note that, in *Poynor*, which is the case that contains the quotation plaintiff cited about the "mindless application of mathematics," Judge Gettleman went on to consider whether plaintiff's request in that case for $27,903.50 in fees associated with the fee petition itself was a reasonable amount and decided with very little analysis that the amount should be cut by 50%. 1999 WL 11101566 at *2. In other words, he employed the same percentage reduction method that plaintiff suggests is inappropriate.

108 LRP 13348

**BENITO M., a Minor, and VERONICA M., Individually and as Guardian and Next Friend of BENITO M., Plaintiffs, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299, Defendant**

**U.S. District Court, Northern District of Illinois**

07 C 5950

**February 28, 2008**

**Judge / Administrative Officer**

SUZANNE B. CONLON

**Full Text**

**Appearances:**

### Memorandum Opinion and Order

Benito M. and his guardian Veronica M. ("plaintiffs"), sue the Board of Education of the City of Chicago, District 299, for attorney's fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. # 1415. The parties cross-move for summary judgment. For the reasons set forth below, plaintiffs' motion is granted in part, and the Board of Education's motion is denied.

### I. Summary Judgment Standard

On cross-motions for summary judgment, each movant must satisfy Fed. R. Civ. P. 56's requirements. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.,* 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.,* 500 F.3d 662, 665 (7th Cir. 2007). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury

could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995). Each movant has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If a movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.

### II. Background Uncontested Facts

Benito is a 9-year old boy who resides in Chicago School District No. 299. Pls. Facts # 1. The Board of Education is responsible for providing a free and appropriate education to all special needs children residing in District No. 299. Def. Facts # 5. Benito has a speech/language impairment. Pls. Facts # 7. In pre-school, Benito was declared eligible for special education services. *Id.* However, when Benito completed second grade, he remained unable to read and could not recognize all alphabet letters. *Id.*

On June 29, 2006, plaintiffs, through their attorney Michael O'Connor, requested an impartial due process hearing to redress the Board of Education's failure to provide Benito with a free and appropriate public education under the IDEA. Def. Facts # 6. Plaintiffs requested:

(1) a private therapeutic day school placement at public expense;

(2) reimbursement for independent educational evaluations in areas of identified need;

(3) related services in sufficient intensity to allow Benito access to educational opportunity;

(4) speech/language compensatory services for 30 minutes per week for two years;

(5) occupational therapy compensatory services for 30 minutes per week for two years;

(6) tutoring for 2 hours per week outside of school hours by a special education teacher with a level 1 Wilson Reading certification; and

(7) an individualized education plan ("IEP")

Copyright # 2007 LRP Publications

meeting that would consider the results of evaluations and implement relief

*Id.*

On October 17, 2006, counsel for the Board of Education sought to settle the dispute by providing Benito:

(1) separate day school private placement with transportation through the 2007-08 school year;

(2) an assistive technology evaluation to be completed within 30 days of signed consent and an IEP meeting to consider the results;

(3) an IEP meeting to implement the change in placement to a separate day school within three weeks.

*Id.* # 9. Veronica M. rejected the offer and in December 2006 unilaterally placed Benito in Hyde Park Day School, a private therapeutic day school. *Id.* # 14; Pls. Facts # 13.

The due process hearing began on November 6, 2006, and continued over seven days, concluding on June 11, 2007. The hearing officer issued a decision on June 29, 2006, finding that:

(1) the Board of Education denied Benito a free and appropriate public education under the IDEA from June 29, 2004 until December 2006;

(2) the Board of Education must reimburse Veronica M. for tuition and transportation costs to Hyde Park Day School from December 2006 through the end of the 2006-07 year;

(3) the Board of Education must convene an IEP meeting to conclude no later than two weeks prior to the start of the 2007-08 school year, followed by an IEP utilizing recommendations from a central auditory processing evaluation, assistive technology assessment, and other evaluations, to determine an appropriate public or private placement for Benito; and

(4) the Board of Education must provide 30 minutes per week of compensatory speech/language services for the 2007-08 school year.

Def. Facts # 16. The hearing officer also found

that the Hyde Park Day School was a "proper placement" for Benito where he was doing "very well." Pls. Facts # 13. Hyde Park Day School provided Benito educational and speech services that included 60-90 minutes per week of speech/language therapy, 60 minutes per week of occupational therapy, social work services, assistive technology, and instruction using the Wilson Reading system. Def. Facts Ex. B at 16.

After the hearing, plaintiffs submitted to the Board of Education a claim for attorney's fees in the amount of $58,255.00. Pls. Facts # 19. On October 10, 2007, an IEP team determined that the Hyde Park Day School would be Benito's placement for the 2007-08 school year. *Id.* # 18. The IEP meeting was two months overdue. Pls. Resp. # 17. Plaintiffs claim a supplemental fee claim for work done to secure compliance with the hearing officer's decision. In all, plaintiffs seek $60,091.50 in fees.

## III. Attorney's Fees Under the IDEA

The parties move for summary judgment on the issue of attorney's fees. The IDEA fee-shifting provision provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. # 1415(i)(3)(B); *see also Linda T. v. Rice Lake Area Sch. Dist.,* 417 F.3d 704, 707 (7th Cir. 2005).

### A. Prevailing Party

A plaintiff prevails when he obtains actual relief on the merits of a claim that materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff *Id.* at 708 *(citing Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). A plaintiff may be considered a prevailing party if he succeeds on any significant issue in litigation which achieves some of the benefit sought in bringing suit. *T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469, 479 (7th Cir. 2003). The prevailing party inquiry "does not turn on the magnitude of relief

obtained." *Linda T.,* 417 F.3d at 708.

Plaintiffs contend they are prevailing parties because the hearing officer found that the Board of Education failed to provide Benito with a free and appropriate public education from June 2004 to December 2006, ordered the Board of Education to reimburse plaintiffs for tuition and transportation costs incurred as a result of their unilateral placement of Benito at Hyde Park Day School, and further ordered compensatory speech services of 30 minutes per week for the 2007-08 school year. The hearing officer granted relief on plaintiffs' principal claims regarding private placement and compensatory services. Therefore, even though plaintiffs did not succeed on every issue, they are prevailing parties. *See, e.g., T.D.,* 349 F.3d at 479-480 (prevailing party need not succeed on every issue, but may prevail on certain significant issues and achieve at least some of benefit sought).

The Board of Education's argument that plaintiffs are not prevailing parties because they rejected a generous settlement offer is flawed. The issue is whether plaintiffs prevailed on their claims in the administrative proceeding, not whether plaintiffs prevailed with respect to a rejected settlement offer. *Cf. Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U,* 109 F.3d 1250, 1253 (7th Cir. 1997) (citation omitted) (prevailing party must obtain at least some relief on merits of his claim). Rejection of the settlement offer therefore has no bearing on whether plaintiffs are prevailing parties.

## B. The Board of Education's Settlement Offer

Nevertheless, the Board of Education argues plaintiffs are statutorily barred from receiving attorney's fees because they rejected a settlement offer more favorable than the relief they obtained from the administrative hearing. Contrary to the Board of Education's assertion, # 1415(i)(3)(D) of the IDEA does not completely bar attorney's fees, but only limits fees to work performed before the written settlement offer is made. The provision prohibits the

award of attorney's fees for services performed after the receipt of a written settlement offer only if: (1) the offer is more than ten days before the administrative proceeding begins; (2) the offer is not accepted within ten days; and (3) the court finds that the relief finally obtained by the parents is not more favorable to the parents than the settlement offer. 20 U.S.C. # 1415(i)(3)(D)(i). Additionally, this provision does not apply where a parent is "substantially justified" in rejecting the settlement offer. 20 U.S.C. # 1415(i)(3)(E).

It is undisputed that the Board of Education's rejected settlement offer was made more than ten days before the administrative hearing began. The issue is whether the relief awarded was "not more favorable" than the Board of Education's settlement offer; if not, whether plaintiffs were substantially justified in rejecting the offer.

The settlement offer included a separate day school placement with transportation for two years, completion of an assistive technology evaluation within 30 days (and an IEP meeting to consider the results), and an IEP meeting to implement the placement change. There are two substantive differences between this offer and the relief obtained. First, the Board of Education offered an additional school year of private placement and transportation to an unidentified school. Second, the hearing officer granted weekly 30-minute compensatory speech/language services (for 2007-08) not included in the settlement's offer.

The Board of Education proffers evidence that the cost of private placement and transportation for the 2007-08 school year far exceeds the cost of weekly 30-minute compensatory speech/language services for the 2007-08 school year. Def. Facts ## 18-23. However, this fact does not demonstrate that the offer was more favorable than the relief obtained. Indeed, the settlement offer was not more favorable than the relief finally obtained.

For one, the offer failed to specify where Benito would be placed. This is significant because the hearing officer's decision affirmed Benito's specific

placement at the Hyde Park Day School. See Def. Facts Ex. B at 16. The hearing officer detailed Benito's progress at the school and noted the specialized services he received there. *Id.* Placement at the Hyde Park Day School in particular was therefore integral to the hearing officer's decision. It is true that the Board of Education could not have offered placement at the school because Benito had not yet been admitted there. However, there is no basis to conclude that a two-year private placement offer at an unidentified school was more favorable than Benito's specific placement at the Hyde Park Day School. Furthermore, it is unclear whether plaintiffs even sought private placement for more than one year.

Additionally, the settlement offer was not more favorable because it did not provide compensatory services. Those are future educational services awarded as a result of a school district's past failure to provide a free and appropriate public education. *Kevin T. v. Elmhurst Community School Dist. No. 205,* No. 01 C0005, 2002 WL 433061 (N.D. Ill. Mar. 20, 2002) (Manning, J.) (citation omitted). The hearing officer awarded compensatory speech services to plaintiffs due to the Board of Education's failure to provide Benito a free and appropriate public education. Thus, the settlement offer was not more favorable than the relief finally obtained. Fees are not limited pursuant to # 1415(i)(3)(D)(i). *See, e.g., Mrs. M. v. Tri-Valley Central Sch. Dist.,* 363 F. Supp. 2d 566, 572 (S.D.N.Y. 2002) (fees not limited because prior settlement offer provided slightly less relief than final award).

## C. Reasonableness of the Fee Award

Alternatively, the Board of Education argues plaintiffs' demand for a $60,091.50 lodestar should be significantly reduced because the time billed was excessive and plaintiffs only achieved de minimus success. The reasonableness of counsel's hourly rate, $325.00, is undisputed.

The court has discretion in determining the amount of a fee award. *Hensley v. Eckerhart,* 461

U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A reasonable fee is calculated by the lodestar method: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id.* at 433. In some circumstances, even a plaintiff who formally prevails should receive no attorney's fees at all. *Linda T.,* 417 F.3d at 707. The most critical factor in determining the reasonableness of a fee award "is the degree of success obtained" in relation to the other goals of the lawsuit. *Id.* (citations omitted). While plaintiffs bear the burden of establishing that their fee request is reasonable, *see Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 550 (7th Cir. 1999), the Board of Education must present evidence that plaintiffs' claimed fees were unreasonable. *See Cody v. Harris,* 409 F.3d 853, 860 (7th Cir. 2005).

### 1) Excessive Time

The Board of Education asserts fees should be reduced because they include four classes of largely clerical or duplicative time entries. First, the Board of Education identifies eight similar time entries regarding record requests on June 29, 2006, totaling two hours of work. Plaintiffs respond these were non-clerical requests made to various institutions. Whether or not the requests were clerical, seven of the entries vaguely and duplicatively state that counsel "completed" requests for records. These entries are excessive. The fee award for these entries are reduced by one hour, reducing the lodestar amount to $59,766.50.

Second, the Board of Education argues eight entries regarding preparation of subpoenas and cover letters are excessive. These entries are neither clerical or duplicative because they identify that subpoenas were prepared for different entities along with separate cover letters. Moreover, the entries identify that minimal time -- fifteen minutes each -- was spent preparing these documents.

Third, the Board of Education objects to entries for counsel's review of documents and witness lists for the seven-day administrative hearing. These entries total 1.25 hours. Time billed for this purpose is

not excessive considering that the administrative hearing lasted seven days and involved a number of witnesses, as well as extensive evidence.

Fourth, the Board of Education argues "clerical scheduling entries" on nine different dates (for a total of 4.4 hours) are excessive. These entries include counsels phone calls, letters, and email exchanges with his client, the Board of Education, and the hearing officer. Although 4.4 hours appears excessive for scheduling tasks, plaintiffs demonstrate that significant time was reasonably spent on scheduling the hearing. The hearing officer indicated that the hearing took place over seven months, and was subject to numerous delays because of the Board of Education's attorney's "extremely full schedule in her new position and difficulty having her supervisor confirm specific dates." Def. Facts Ex. B. at 2. Due to unique scheduling challenges caused by the Board of Education's counsel, time billed on scheduling will not be reduced.

## 2) Degree of Success

Finally, the Board of Education argues that even if the court determines that plaintiffs prevailed in the administrative hearing, fees should be significantly reduced because of plaintiffs' de minimus relief. Again, the Board of Education mistakenly compares the relief proposed in its settlement offer with the actual relief obtained.

Plaintiffs prevailed on their most significant claims, namely, placement at the Hyde Park Day School and compensatory speech services. The hearing officer affirmed Benito's unilateral placement at the Hyde Park Day School, where he received specialized speech and occupational therapy services, social work services, and access to assistive technology resources. Additionally, the hearing officer found that compensatory speech services were appropriate given the Board of Education's failure to provide Benito a free and appropriate public education since 2004. Due to these favorable results on significant issues, the relief was not de minimus.

The Board of Education correctly points out that plaintiffs did not completely succeed on their claims. They were denied one year of weekly speech/language compensatory 30-minute services, reimbursement for independent educational evaluations, weekly occupational therapy compensatory service for 30 minutes for two years; and weekly two-hour tutoring outside school hours by a Wilson Reading certified teacher. Reducing fees devoted to these denied services would be impossible because there is no precise method to parse the time devoted to them. Accordingly, counsel's overall request is reduced by a percentage to account for the degree of success his clients obtained. *See, e.g., T.D. v. La Grange Sch. Dist.,* No. 98 C207, 2005 WL 483415 (N.D. Ill. February 28, 2005) (Zagel, J.) (reducing fee award in proportion to relief obtained even though plaintiff prevailed on significant issues); *John M. v. Bd. of Educ. of Evanston Cmty. Consol. Sch. Dist. 65*, No. 01 C1052, 2004 WL 2973748 (N.D. Ill. Nov. 29, 2004) (Guzman, J.) (same). Plaintiffs' request for attorney's fees is reduced by 15%, resulting in a $50,801.53 lodestar.

## IV. Conclusion

For the reasons stated above, plaintiffs' motion for summary judgment is granted in part and the Board of Education's motion is denied. Plaintiffs are awarded reasonable attorney's fees of $50,801.53.

Exhibit E-5