IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYLER H., a minor and LOJWANNA M., individually and as Guardian and Next Friend of KYLER H.<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299<br><br>　　　　　　　　　　Defendant. | No. 08 C 1125<br><br>Judge Amy St. Eve |

**DEFENDANT'S RULE 56.1(b)(3) RESPONSE TO PLAINTIFFS'
RULE 56(1)(a)(3) STATEMENT OF UNCONTESTED FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendant, Board of Education of the City of Chicago ("Board") by its attorneys, General Counsel Patrick J. Rocks and Assistant General Counsel James J. Seaberry, submits its 56.1(b)(3) response to Plaintiff's Local Rule 56.1(a)(3) Statement of Uncontested Facts as follows:

**PARTIES**

　　1.　　KYLER H. is a 9 year-old girl now in third grade. Her school district of residence is Chicago Public School District No. 299. Following a three day due process hearing, KYLER H. prevailed in that an Independent Hearing Officer issued an order which ordered that CPS place her at Acacia Academy, a private therapeutic day school in LaGrange, Illinois. The Hearing Officer also ordered compensatory education services and other relief. KYLER H. brings this action by and through her parent and next friend, LOJWANNA M. (Complaint ¶ 3 and Answer ¶ 3 admits).

**Response:** The Board admits the factual allegations contained in paragraph 1.

　　2.　　LOJWANNA M. also brings this action on her own behalf as the prevailing party in the administrative process. She is KYLER H.'s mother, and she resides with KYLER in Chicago, Illinois and within the boundaries of Chicago Public School District No. 299. (Complaint ¶ 4; Answer ¶ 4 admits).

**Response:** The Board admits the factual allegations contained in paragraph 2.

3.  Defendant BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299 (Hereafter the Board, or CPS) is the Local Education Agency as defined in 20 U.S.C. § 1402(15) and, as such, is responsible for ensuring the provision of a free and appropriate education to all children residing in the district who, because of their disabilities, have special education needs. (Complaint ¶ 5; Answer ¶ 5 admits).

**Response:** The Board admits the factual allegations contained in paragraph 3.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 20 U.S.C. §1415(i)(3). (Complaint ¶ 2; Answer ¶ 2).

**Response:** The Board admits the factual allegations contained in paragraph 4.

5.  Venue is properly in this Court. (Complaint ¶ 2; Answer ¶ 2).

**Response:** The Board admits the factual allegations contained in paragraph 5.

## FACTS

6.  Kyler was born with the umbilical cord wrapped around her neck; she had left sided weaknesses and developmental delays. She received early childhood services until age 3 on the basis of developmental delay. (Complaint ¶ 6; Answer ¶ 6 lacks information; see also Due Process Decision, Exhibit A, page 6 at ¶ 1).

**Response:** The Board admits the factual allegations contained in paragraph 6.

7.  Kyler was determined eligible for special education services in 2002 and received Early Childhood Special Education Services (ECSE) from September 2002 until the end of the 2004-5 school year. (Complaint ¶ 7; Answer ¶ 7 admits).

**Response:** The Board admits the factual allegations contained in paragraph 7.

8.  When Kyler was six years old, in May 2005, CPS conducted an evaluation, which found that she had low average intelligence and academic

functioning consistent with her cognitive abilities. As a result, the IEP team terminated her eligibility for special education services. (Complaint ¶ 8; Answer ¶ 8 admits).

**Response:** The Board admits the factual allegations contained in paragraph 8.

    9.    For the 2005-6 school year, Kyler was transferred to Warren Elementary School, where CPS staff placed her in a regular first grade classroom, causing her to skip kindergarten. (Complaint ¶ 9; Answer ¶ 9 admits).

**Response:** The Board admits the factual allegations contained in paragraph 9.

    10.    Kyler did not make academic progress during first grade; progress reports show that she received failing grades in reading, writing, math, science, and social studies for most of that time. (Complaint ¶ 10; Answer ¶ 10 admits).

**Response:** The Board admits the factual allegations contained in paragraph 10.

    11.    During second grade, Kyler also experienced academic difficulties, receiving a grade of F in reading, spelling, written comprehension, and science. (Complaint ¶ 11; Answer ¶ 11 admits).

**Response:** The Board admits the factual allegations contained in paragraph 11.

    12.    Kyler has had behavioral difficulties since a young age, which have worsened over time. During first grade, Kyler was hospitalized at Hartgrove Hospital, a psychiatric facility for children and adolescents, for five weeks, beginning in April 2006. (Complaint ¶ 12; Answer ¶ 12 admits).

**Response:** The Board admits the factual allegations contained in paragraph 12.

    13.    Kyler's mother requested that CPS evaluate her for a possible learning disability and emotional disorder in May 2006, April 2007, and again in May 2007. After each request, CPS refused to evaluate Kyler. (Complaint ¶ 13; Decision, Exhibit A at page 7, ¶¶ 13 and 17).

**Response:** The Board admits that Plaintiff asked for certain evaluations as alleged, but denies the remaining allegations of paragraph 13.

    14.    Lojwanna M. retained Mauk & O'Connor, LLP and Michael A. O'Connor to represent them, and on their behalf he requested a due process hearing on June 20, 2007 to redress violations of the Individuals with Disabilities

Act (IDEA), 20 U.S.C. § 1401, *et. seq.* (Complaint ¶ 14; Answer ¶ 14 admits parents retained counsel; see also Decision, Exhibit A at page 1).

<u>Response:</u> The Board admits the factual allegations contained in paragraph 14.

15. In response to the pending due process hearing, CPS scheduled a special evaluation on July 30, 2007. Kyler was assessed by CPS staff, including an Occupational Therapist, School Social Worker, Speech Language Pathologist, and School Psychologist. The evaluations were carried over to August 2, 2007. (Complaint ¶ 15; Answer ¶ 15 admits evaluation was scheduled, but denies that it was in response to any act by Plaintiffs; see also letter from Tracy Hamm attached hereto as Exhibit H).

<u>Response:</u> The Board admits in part that an evaluation was scheduled as alleged. The Board affirmatively states that the special evaluation was not conducted pursuant to any judicial action or administrative hearing.

16. An IEP team also convened on July 30, 2007, and again on August 2, 2007. The IEP team determined that Kyler was eligible for special education services, and the IEP team prepared an IEP for Kyler. (Complaint ¶ 16; Answer ¶ 16 admits).

<u>Response:</u> The Board admits the factual allegations contained in paragraph 16. The Board affirmatively states that the IEP team did not convene pursuant to court order.

17. Kyler's mother objected to the adequacy of the evaluations and to the adequacy of services provided in the IEP of August 2, 2007. Plaintiffs' counsel prepared an amended due process complaint reflecting their concerns. (Complaint ¶ 17; Answer ¶17 admits that Plaintiff objected. Board admits that a complaint was prepared as alleged).

<u>Response:</u> The Board admits that Plaintiffs objected as stated. The Board admits that a complaint was prepared as alleged but denies any inference of validity of those complaints or of any legal justification or authorization for involvement by Plaintiffs' counsel.

4

18. A due process hearing ensued, beginning on October 24, 2007, and continuing on October 25 and October 26, before an independent hearing officer (IHO) appointed by the Illinois State Board of Education. Following the hearing the IHO issued a decision and order on November 16, 2007 (a copy of the decision is attached hereto as Exhibit A). (Complaint ¶ 18; Answer ¶ 18 admits).

**Response:** The Board admits the factual allegations contained in paragraph 18.

19. The IHO found that CPS denied Kyler a free and appropriate public education from June 20, 2005 until November 2007, based on procedural violations, failure to evaluate Kyler in a timely manner, and inadequacies in the special evaluation conducted in the summer of 2007, and inadequacies in the Individual Education Plan (IEP) for the 2007-8 school year. (Complaint ¶ 19; Answer ¶ 19 admits such a finding).

**Response:** The Board admits that such findings were made but denies any

allegation of the validity of such findings.

20. The IHO ordered that CPS:
   a. Provide Kyler with a private therapeutic day school placement at public expense at Acacia or a similar school;
   b. Provide independent educational evaluations at public expense, including but not limited to psychological assessments of cognitive and academic skills, occupational therapy assessments, and assistive technology assessment, as well as reassessing the nature and extent of the student's learning disabilities;
   c. Reimburse the cost of the independent speech language evaluation;
   d. Provide compensatory education services for loss of FAPE during the past two years, including:
      I. Additional social work and/or psychological counseling services of 30 minutes per week for two years;
      II. Tutoring by a certified special education teacher at a site selected by the parents for two hours per week for two years;
   e. Convene an IEP meeting and draft an IEP that will consider the full nature and extent of student's disabilities to provide a program of education and related services. (Complaint ¶ 20; Answer ¶ 20 admits that such an order was entered).

**Response:** The Board admits that such an order was entered but denies any inference of the validity of any factual allegations underlying said order.

21. Kyler began attending Acacia Academy, at CPS expense, in December 2007. (Complaint ¶ 21; Answer ¶ 21 admits).

**Response:** The Board admits the factual allegations in paragraph 21.

22. An independent neuropsychological evaluation at CPS expense has been scheduled with Dr. Lisa Stanford, Ph.D., at the University of Illinois Medical Center for March 27, 2008. An IEP meeting will be scheduled sometime after that date to consider the report produced by that evaluation. (Complaint ¶ 22; Answer ¶ 22 admits).

**Response:** The Board admits the factual allegations in paragraph 22.

23. On January 3, 2008, Kyler and her guardian, Lojwanna M., through their attorney, submitted an interim claim for attorney fees to Defendant CPS (attached hereto as exhibit B). The total amount claimed for representation in the due process hearing through that date is $42,242.28. (Complaint ¶ 23; Answer ¶ 23 admits fee claim submitted as alleged).

**Response:** The Board admits that Plaintiffs submitted a fee petition as alleged, but the Board denies that all of the fees claimed are authorized by law, or are reasonable or necessary.

24. Plaintiffs have incurred, and will incur, additional attorney fees for monitoring compliance with the IHO decision and for attendance at the IEP meeting that will be convened in accordance with IHO's order. (Complaint ¶ 24; Answer ¶ 24 denies; see supplemental invoice attached as exhibit C).

**Response:** The Board admits the factual allegations pursuant to paragraph 24, but the Board denies that all of the additional fees that have been claimed are authorized by law, or are reasonable and necessary

25. Plaintiffs submitted a supplemental fee petition for fees for legal services in connection with the due process proceeding incurred from January 1, 2008 through May 16, 2008. The amount claimed in the supplemental petition is

$5,044.70. The total amount of attorney fees claimed in the initial petition and the supplemental petition is $47,286.98. (Petition attached hereto as Exhibit C; see also affidavit of Michael A. O'Connor, Exhibit D at ¶ 5).

**Response:** The Board admits that Plaintiffs submitted a supplemental fee petition as alleged, but the Board affirmatively states that it has been not been afforded the proper notification to contest the reasonableness of the additional fees according to Local Rule 54.3(d), stipulating that within 14 days before a motion is filed, parties will have the opportunity to discuss requested fees. The Board affirmatively states that the supplemental fee petition was not received until after plaintiffs filed their complaint and motion for summary judgment, and after settlement negotiations in February and March 2008 had concluded. *See* Plaintiffs' Rule 56.1(a)(3) Motion Exhibit C, filed May 16, 2008; *See also* Exhibit A, February 19, 2008 Settlement Emails between Plaintiffs' and Defendant's counsel; *See also* Defendant's Rule 56.1(a)(3) Motion Exhibit C, Offer of Judgment. Furthermore, the Board affirmatively states that the final amount on the supplemental fee petition does not match amount claimed by Plaintiffs in their own Memorandum of Law in support of their Motion for Summary Judgment, submitted simultaneously. *See* Plaintiffs' Memo at 5, stating the amount of requested fees totaled $46,761.98, and not $47,286.98.

26. Hourly rate for Michael A. O'Connor in connection with this case was $325 per hour in 2007 and $350 per hour in 2008. (Affidavit of Michael A. O'Connor, Exhibit D at ¶ 6). The following range of hourly rates prevail in the Chicago metropolitan area for attorneys representing parents in special education matters:
        a. Senior Partners (25-35 years of experience)   $295-350/hr
        b. Associate Attorneys   $145-225/hr

        c. Experienced Paralegals                              $85-105/hr

See attached affidavit of Michael A. O'Connor (Exhibit D); see also affidavits of Matt Cohen (Exhibit E); Mary E. Moran (Exhibit F); and Charles Fox (Exhibit G).

**Response:** The Board admits the factual allegations contained in paragraph 26 and the affidavits attached to paragraph 26. In admitting these factual allegations, the Board states that the issue of hourly rates is not relevant to settling the question of unreasonable and excessive attorneys' fees.

      27.    Plaintiffs' counsel, Michael A. O'Connor, has been licensed to practice law since 1970, and he has extensive litigation experience. Peter Godina has more than 4 years experience as a legal assistant, including 1 ½ years as a legal assistant at the firm of Mauk & O'Connor, LLP for more than one year (Affidavit of Michael A. O'Connor.)

**Response:** The Board admits that Michael A. O'Connor's affidavit contains the factual allegations contained in paragraph 27. In admitting these factual allegations, the Board states that the issue of Michael A. O'Connor's experience is not relevant to settling the question of unreasonable and excessive attorneys' fees.

**ADDITIONAL FACTS**

      28.    Since 2006, Mauk & O'Connor, LLP, has filed forty-four attorneys' fee petition cases against the Board, and over the course of the forty-four petitions, Mauk & O'Connor has sought $1,496,781.90 in attorneys' fees, and received $1,281,207.20 in such fees. *See* Exhibit B, Kathleen M. Gibbons's affidavit ¶ 4. In only five such petitions have Mauk & O'Connor received payment of their fee petition in full. *Id.* at ¶ 11.

29.　In twelve such petitions, there have been fees related to IEP meetings not occurring pursuant to court order or judicial action but occurring after filing of a due process request. The Board has objected to every instance of fees charged for IEP meetings not held pursuant to an order by the due process hearing officer. *Id* at ¶ 5.

30.　In ten of the twelve petitions where the Board objected to fees for IEP meetings not occurring pursuant to court order or judicial action but occurring after filing of a due process request,, Mauk & O'Connor settled the issue out of court.  Mauk & O'Connor either heeded the Board's objection, or self-reduced their own fees, stating "NO CHARGE" next to any fee for an IEP meeting not held pursuant to an order by the Due Process hearing officer.  Mauk & O'Connor has agreed to reductions totaling $19,879.52 for unreasonable fees relating to charges for  IEP meetings not held pursuant to an order by the due process hearing officer. *Id.*  at ¶¶ 6-9.

31.　Two of the twelve fee petitions with fees for IEP meetings, not held pursuant to an order by the due process hearing officer, were litigated and judgments were entered against the Board.  However, in the first case, *Jessica P.*, No. 05 C 5, the Board chose to argue that the plaintiffs' prevailing party state and the unreasonableness of fees associated with excessive time spent preparing for the hearing and researching. *Id.* at ¶ 10. In the second case, *Eric A.*, No. 06 C 0302, the Board's objection to payment of fees for IEP meetings not held pursuant to an order by the Due Process hearing officer was rejected by this Court, but only

9

because the Board did not sufficiently prove that the IEP meeting had not occurred pursuant to judicial action. As a matter of law, Mauk & O'Connor has not specifically prevailed on the merits of any argument stating they may be paid for their fees relating to IEP meetings not held pursuant to an order by the Due Process hearing officer. *Id.* at ¶ 10.

32.     In the instant case, plaintiffs' original fee petition, amounting to $42,242.28, included $6,825.00 in fees for attendance at, travel to and from, and paperwork drafted in response to the July 30 and August 2, 2007 IEP meetings, which did not occur pursuant to court order or judicial action. *See* Defendant's Rule 56.1(a)(3) Motion ¶¶ 15-16; *See also* Exhibit A, February 19, 2008 Settlement Emails between Plaintiffs' and Defendant's counsel at 2:10 PM.

33.     The Board made a several attempts to settle with Plaintiffs regarding their original fee petition of $42,242.28, by offering first $31,100.00, then $35,400.00, then making a final offer of judgment for $37,000.00. *See* Exhibit A *See also* Defendant's 56.1(a)(3) ¶16 and Exhibit C. The first offer of $31,100.00 excluded in part $6,825.00 in IEP meeting fees, as part of eighteen total contested fees the Board argued were excessive and unreasonable. *See* Exhibit A, The Board advised Plaintiffs that fees for IEP-related activities were expressly barred by the IDEA. *Id.; See Also* Defendant's Rule 56.1(a)(3) Motion ¶ 16. Plaintiffs rejected the Board's offer, claiming to have successfully litigated the issue of fees for IEP meetings held while the due process hearing was pending in prior cases. *See* Exhibit A. The final offer of settlement, made March 6, 2008, offered $37,000,

was a higher amount than total IEP meeting reduction should have reflected, but the Board was attempting to avoid litigating the fee petition. *See* Defendant's 56.1(a)(3) Motion Exhibit C

34. In the instant case, the Board has never raised issue regarding plaintiffs' counsel's hourly rates nor denied that plaintiffs were the prevailing party. *See* Exhibit A; *See also* Defendant's Answer to Complaint ¶ 4.

                              Respectfully submitted,
                              Patrick J. Rocks
                              General Counsel


                              By: s/ James J. Seaberry
                                  James J. Seaberry
                                  Attorney for Defendant Board
                                  Assistant General Counsel
                                  Board of Education of the City of
                                  Chicago – Law Department
                                  125 South Clark Street, Suite 700
                                  Chicago, Illinois 60603
                                  (773) 553-1700