UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KYLER H., a minor, and )
LOJWANNA M., individually and )
as guardian and Next Friend of Kyler H., )
                      Plaintiff, )
    v. )    Case No. 08 C 1125
 )
BOARD OF EDUCATION OF THE )    Judge Amy St. Eve
CITY OF CHICAGO, DISTRICT 299 )
                 Defendant. )

**BOARD OF EDUCATION OF THE CITY OF CHICAGO'S
MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Board of Education of the City of Chicago ("Board"), through

its General Counsel Patrick J. Rocks and Assistant General Counsel James J.

Seaberry, hereby submits its Memorandum of law in reply to plaintiffs' response

to Defendant's Motion for Summary Judgment:

**I.    INTRODUCTION**

Plaintiffs have filed this action seeking attorneys' fees pursuant to the

Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(3).

Plaintiffs claim reimbursement for fees totaling $47,286.98.  The parties have filed

cross-motions for summary judgment on the plaintiffs' claims. The Board objects

to paying all attorneys' fees associated with the Individualized Education

Program (IEP) meetings convened on July 30, 2007 and August 2, 2007, because

they are unreasonable fees. The Board's objection is in accordance with IDEA, 20

U.S.C. § 1415(i)(3)(D)(ii), barring fee awards for attendance at IEP meetings not

convened as a result of an administrative proceeding or judicial action. The
Board files this reply to the plaintiffs' response to the Board's Motion for
Summary Judgment in order to distinguish the plaintiff's arguments and
correctly illustrate the controlling arguments on § 1415(i)(3)(D)(ii).

## II.    ARGUMENT

The Board does not have to pay the plaintiffs' attorney's fees related to his
attendance at the July 30 and August 2, 2007 IEP meetings, because they were not
convened as a result of an administrative proceeding, and are unreasonable.
IDEA, 20 U.S.C. § 1415(i)(3)(D)(ii), 2004. Plaintiffs' attorney charges several such
fees, and contends that because the IEP was convened after the filing of the due
process hearing request, that they were somehow ordered by an administrative
or judicial body. Plaintiffs' attorney's argument is wrong and goes against this
jurisdiction's clear precedence. The contested IEP meetings were convened by
the Board with the hopes of avoiding the administrative hearing. Plaintiff's
56.1(a)(3) Statement of Material Fact (hereinafter "SOF") ¶ 15 (admitting that the
Board scheduled the evaluations). Unfortunately, Kyler's mother did not like the
IEP's findings, and she chose to amend her due process complaint. Plaintiff's
SOF ¶ 17 (admitting that the plaintiffs chose to amend their complaint and
continue with litigation). The amended complaint resulted in the administrative
hearings eventually taking place on October 24, 25, 26, 2007, culminating in an
administrative order mandating Kyler H.'s educational needs. Plaintiff's SOF ¶¶

16, 18 (admitting that no administrative hearing or official judicial action was ordered before the contested IEP meetings convened).

IDEA states, "Attorneys' fees may not be awarded relating to any meeting of the IEP team unless such meeting is convened as a result of an administrative proceeding or judicial action …" 20 U.S.C. § 1415(i)(3)(D)(ii), 2004. In addition to the plain language's clarity, the congressional record further solidifies its meaning. Unless an IEP is specifically ordered to convene as a result of an administrative hearing and order, attorneys may not be paid for their attendance at meetings intended for "parents and schools to work out differences in a less adversarial manner." 142 Cong Rec H 6051.

This jurisdiction has issued clear interpretations of the section, finding that where IEPs convene before any due process hearing has commenced, attorneys may not collect any fees for their attendance, regardless of if those IEPs were convened after the parents filed their due process complaint. *See M.V. v. Gordon*, No. 98 C 8408, 1999 WL 417394 at \*2-3 (N.D. Ill. June 15, 1999); *Brandon K. v. New Lenox Sch. Dist.*, No. 01 C 4625, 2001 WL 34049887 at \*3 (N.D. Ill. Dec. 03, 2001). While those IEP meetings may have addressed the same issues resolved by the administrative hearing's order, they simply were not "convened *as a result* of an administrative proceeding." IDEA, 20 U.S.C. § 1415(i)(3)(D)(ii), 2004 (emphasis added).

This jurisdiction has reiterated its interpretation of § 1415(i)(3)(D)(ii) in *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 709-10 (7th Cir. 2005). The

3

Seventh Circuit explained that § 1415(i)(3)(D)(ii) "*removes* discretion from the court over a certain category of fees but does not *compel* the exercise of the court's discretion in favor of the category of fees included in the prohibition's 'unless' clause." *Id.* at 709. The Seventh Circuit concluded that § 1415(i)(3)(D)(ii) "does not create a presumptive entitlement to fees where the exception to the exclusion applies." *Id.* at 710. *Linda T.* follows the spirit of *M.V.* and *Brandon K.*: in this jurisdiction, the statute's plain language is not debatable. Even where such fees for IEP meetings convened as a result of an administrative proceeding are charged, there is still no presumption that attorneys are entitled to the fee payment as a matter of law.

The plaintiffs cite the precedence of New York and Virginia, which disagrees with the interpretation offered by this jurisdiction. However, the opinions offered by the plaintiffs are simply not the majority opinion governing this court. In fact, plaintiffs' two New York cases, *F.R. v. Board of Education, Plainedge Public Schools*, 67 F. Supp. 2d 142 (E.D.N.Y. 1999) and *Sabatini v. Corning-Painted Post Area School District*, 190 F. Supp. 2d 509 (W.D.N.Y. 2001)[1], are thrown into question by *J.C. v. Regional School District 10, Board of Education*, 278 F.3d 119 (2d Cir. 2002). While *J.C.* originated in Connecticut, it is controlling precedence for the entire Second Circuit, which encompasses the Eastern and Western Districts of New York. Given that *J.C.* was issued in 2002, it stands to

---

[1] The Board's counsel respectfully corrects plaintiffs' counsel's citation error on its case, *Sabatini v. Corning-Painted Post Area School District*, 190 F. Supp. 2d 509 (W.D.N.Y. 2001). Plaintiffs' counsel incorrectly cites the case as a 2007 case, when the record reflects it is a 2001 case.

4

reason that the plaintiffs' New York cases, decided in 1999 and 2001, may not be valid in light of the Second Circuit's 2002 opinion.

Additionally, other jurisdictions join the Second and Seventh Circuits in their holdings on the unreasonableness of attorneys' fees for attendance at IEP meetings not convened pursuant to any judicial order. *See Brown v. Barbara Jordan P.C.S.*, 539 F. Supp. 2d 436 (D.D.C. 2008) (aff'ing the rulings of two prior cases, *Alfonso v. Dist. of Columbia*, 464 F. Supp. 2d 1 (2006) and *Dist. of Columbia v. R.R.*, 390 F. Supp. 2d 38 (2005)); *and C.C. v. Granby Bd. of Educ.*, 453 F. Supp. 2d 569 (D.Conn. 2006). While districts in New York and Virginia may not agree with the Second and Seventh Circuits and the Northern District of Illinois, the Second Circuit and the districts of the District of Columbia and Connecticut do. Plaintiffs' arguments, while citing persuasive authorities, are simply not the controlling authorities nor representative of the majority opinion on § 1415(i)(3)(D)(ii).

In *J.C. v. Regional School District 10, Board of Education*, 278 F.3d 119 (2d Cir. 2002), the Second Circuit heard the plaintiff's appeal for payment of his attorneys' fees charged for attendance at IEP meetings convened after plaintiff filed his complaint but before an administrative hearing occurred. The plaintiff filed his original complaint requesting a due process hearing on November 11, 1998, and the school convened IEP meetings on November 19, 1998 and January 25, 1999. *Id.* at 122. Both parties agreed to the outcome of the IEP meetings. *Id.* Both parties originally agreed to hold an administrative hearing in order to

incorporate the IEPs into the official record, but the school board objected at the eleventh hour, and the hearing officer dismissed the hearing as moot. *Id.* Plaintiffs then filed a fee petition before the district court, and won all fees except those fees for time spent preparing for and attending IEP meetings. *Id.* Plaintiffs appealed before the Second Circuit on the issue of IEP meeting fees. *Id.* at 123. The Second Circuit refused to award the plaintiffs their IEP meeting fees. *Id.* at 125. The Second Circuit explained that the IEP meetings, convened after plaintiffs filed their due process complaint but before the administrative hearing, were "a mechanism for compromise ... rather than adversarial confrontation," and that "this atmosphere would be jeopardized ... [by encouraging] the participation of counsel in the IEP process." *Id.* at 124-5. The Second Circuit also rejected any theory that the IEP meeting (convened after a request for a due process hearing) was a judicial remedy or order in itself, acknowledging that while it may have changed the parties' legal relationship, it was not a "judicially sanctioned change." *Id.* at 125.

*Alfonso v. District of Columbia,* 464 F. Supp. 2d 1 (D.D.C. 2006) (*aff'ing Dist. of Columbia v. R.R.,* 390 F. Supp. 2d 38, 41 (D.D.C. 2005) *and aff'd by Brown v. Barbara Jordan P.C.S.,* 539 F. Supp. 2d 436, 438 (D.D.C. 2008)), addressed the issue of fee payment for IEP meetings occurring after the filing of the complaint and before any hearing took place. In *Alfonso,* the child's parents filed an IDEA suit on October 21, 2004, and an IEP was convened on the child's behalf on November 15, 2004. *Id.* at 3, 8. The child's parents prevailed in their suit against

6

the school on February 16, 2006, and on March 17, the parents filed their

attorneys' fees petitions. *Id.* at 3. The school district admitted that the parents

were the prevailing party but objected to paying the November 15, 2004 IEP

meeting fees. *Id.* at 4. The court held that the November 15, 2004 IEP meeting had

not been convened pursuant to an administrative proceeding or judicial action,

even though a complaint had been filed on October 21. *Id.* at 7. The plaintiffs

defended the IEP meeting fees by stating that § 1415(i)(3)(D)(ii) should be "

'soften[ed]' ... because the IEP meeting here eventually culminated in due

process appeals." *Id.* The court rejected this argument, stating "when a statute is

unambiguous ... the court must apply its terms literally, and the court declines to

'soften' the statute." *Id.* Plaintiffs' attorney fee award was reduced by the amount

charged for the November 15 IEP meeting. *Id.*

    In *County School Board of York County, Virginia v. A.L.*, No. 4:03cv174, 2007

WL 756586 (E.D. Va. March 6, 2007), a school board contested to paying for an

IEP meeting convened after the district court's determination and before the

school's federal appeal. On January 18, 2005, the school board lost its case before

the district court, contesting an IDEA hearing order against it, and on February 1,

the parent-defendants filed their fee petition. *Id* at *1. The school board moved to

appeal before the Fourth Circuit, and the fee petition motion was stayed. *Id.* at *2.

Before the appeal was tried, an IEP meeting was convened to replace the original

IEP that caused the litigation to commence. *Id.* at *13. The school lost its appeal

on September 7, 2006, and on January 26, 2007, the fee petition motions were

reinitiated. *Id.* at *2. During the fee petition hearing, the school board objected to paying for the IEP meeting that occurred after it lost in district court but before its appeal. *Id.* at *13. The court rejected its objection, because its contention that the IEP was not judicially mandated was factually inconsistent with its appeals argument. *Id.* During the appeal, the board argued that because this new IEP replaced the problematic one, the case was moot. *Id.* The board now argued that the contested IEP "did not concern contested issues before the Court." *Id.* Because the school board argued "factually distinct and opposed positions in the same proceeding," their argument was without merit, and it had to pay for the attorneys' attendance at the IEP meeting. *Id.*

In the instant case, the Board objects to paying for July and August IEP meetings convened before the October administrative hearing took place. While the plaintiffs had submitted their request for a due process hearing, no such hearing had yet occurred, meaning no hearing officer or judicial body could have ordered the IEP meetings to convene.

*J.C. v. Regional School District 10, Board of Education*, 278 F.3d 119 (2d Cir. 2002) and *Alfonso v. District of Columbia*, 464 F. Supp. 2d 1 (D.D.C. 2006) are analogous to the instant case. In all three cases, IEP meetings were convened after the parents had filed some form of IDEA complaint. 278 F.3d at 122; 464 F. Supp. 2d at 3. In all cases, no administrative hearing or judicial action had yet occurred. 278 F.3d at 122; 464 F. Supp. 2d at 3. While the IEP meetings addressed the same issues that would be addressed during the eventual hearings, there was

8

no legal order mandating that the schools convene the meetings. 278 F.3d at 124; 464 F. Supp. 2d at 3. The courts in both cases correctly found that the attorneys' decisions to attend these meetings were not recoverable fees under § 1415(i)(3)(D)(ii), and this court should find similarly in the instant case. 278 F.3d at 125; 464 F. Supp. 2d at 7.

Plaintiffs' case *County School Board of York County, Virginia v. A.L.*, No. 4:03cv174, 2007 WL 756586 (E.D. Va. March 6, 2007), is distinguishable from the case at bar. First, the contested IEP meeting was convened after the district court issued a ruling finding the school at fault. *Id.* at *13. Second, the school board had to pay for the IEP meeting largely because it contradicted and manipulated the IEP's purpose before two different courts, which was noted by the lower court. *Id.* The procedural misstep in using the IEP meeting as both a judicially vital part of its appeal, then claiming the IEP's lack of judicial mandate caused the school to lose its right to assert § 1415(i)(3)(D)(ii). *Id.* With regards to the issue of paying for an IEP meeting convened before the initial hearing, at no point in the proceedings' outcomes do *A.L.* or the instant case share a factual similarity.

### III.    CONCLUSION

The Board should not have to pay for the IEP meetings convened before the administrative hearing took place. Just because the plaintiffs had filed their complaint does not mean that the IEP meetings were convened by order before any hearing or judicial action occurred. The clear majority opinion agrees with the Board's interpretation of § 1415(i)(3)(D)(ii), and while plaintiffs may rely on a

minority opinion, plaintiffs' view is not the interpretation of the law that controls

this jurisdiction nor a majority of jurisdictions throughout the country.

<div style="margin-left:40%">

Respectfully submitted,
Patrick J. Rocks
General Counsel


By: s/ James J. Seaberry
James J. Seaberry
Attorney for Defendant Board
Assistant General Counsel
Board of Education of the City of
Chicago – Law Department
125 South Clark Street, Suite 700
Chicago, Illinois 60603
(773) 553-1700

</div>

## CERTIFICATE OF SERVICE

I, James J. Seaberry, certify that I caused the attached **BOARD OF EDUCATION OF THE CITY OF CHICAGO'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be served upon counsel of record *via* CM-ECF E-Filing pursuant to General Order on Electronic Case Filing, Section XI(C), on this 11th day of July, 2008.

s/ James J. Seaberry
James J. Seaberry
Assistant General Counsel
Board of Education of the City of Chicago
125 South Clark Street, Suite 700
Chicago, Illinois 60603
(773) 553-1700

Westlaw.

Not Reported in F.Supp.2d                                                                                        Page 1
Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.))**

C

M.V. v. Gordon
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
M.V. and Mr. and Mrs. V., Individually and as Par-
ents and Next Friends of M.V., Plaintiffs,
v.
Jerome GORDON, Superintendent, in his Official
Capacity; Anne Dwyer, Coordinator of Special
Education, in her Official Capacity, and the Bloom-
ingdale Elementary School District # 13 Board of
Education, Defendants.
No. 98 C 8408.

June 15, 1999.

*MEMORANDUM OPINION AND ORDER*

MAROVICH, J.
**\*1** Plaintiffs M.V. and Mr. and Mrs. V., individu-
ally and as parents and next friends of M.V., have
filed a Complaint against Defendants Bloomingdale
Elementary School District, Board of Education
("the District"), its superintendent, Jerome Gordon,
and its coordinator of special education, Anne
Dwyer (collectively, the "Defendants"). Plaintiffs
seek attorneys' fees and costs pursuant to the Indi-
viduals With Disabilities Education Act ("IDEA"),
20 U.S.C. § 1415(i)(3), for successfully negotiating
changes in the educational program of M.V. De-
fendants now move to dismiss Plaintiffs' Com-
plaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure
to state a claim upon which relief may be granted.
For the reasons set forth below, Defendants' motion
to dismiss is granted.

*BACKGROUND*

M.V. is a 13-year-old boy who has been diagnosed
with Attention Deficit Hyperactivity Disorder
("ADHD"). M.V. resides within the boundaries of

the District, a Local Education Agency as defined
in 20 U.S.C. § 1402(15) responsible for providing a
free and appropriate education to all children resid-
ing in the district, who, because of their disabilities,
have special education needs.

On October 31, 1997, M.V. engaged in behavior
which resulted in school administrators suspending
him with the threat of expulsion. At a November
10, 1997 "Manifestation Determination Review" to
discuss whether M.V.'s behavior was related to his
disability, counsel for Mr. and Mrs. V. submitted a
handwritten request for an impartial due process
hearing to determine special education eligibility
for their child. This request was followed on
November 17, 1997 by a more formal request out-
lining areas in which M.V.'s parents felt the District
had failed to provide M.V. with appropriate public
education as mandated by the IDEA.

As a result of the request for a due process hearing,
the District agreed to conduct a case study evalu-
ation of M.V. which took place during December
1997 and January 1998. On January 20, 1998, a
Multi-Disciplinary Conference ("MDC") and Indi-
vidual Education Plan ("IEP") meeting was con-
vened, and the District agreed with Mr. and Mrs. V.
that M.V. was a student eligible for special educa-
tion services. Subsequent to the MDC/IEP meeting,
the parties engaged in further negotiations, and, on
May 20, 1998, met at a new MDC/IEP meeting
wherein the parties agreed that M.V. continued to
be eligible for special education due to his ADHD.
The parties conducted further negotiations until
resolving the final issues in August 1998.

Having successfully obtained the relief they sought
for M.V., Mr. and Mrs. V. formally withdrew their
request for a due process hearing in a September
23, 1998 letter. In a separate letter dated October 9,
1998 to the District's attorney, Mr. and Mrs. V. re-
quested reimbursement of their attorney's fees and
costs from the District as a prevailing party pursu-
ant to 20 U.S.C. § 1415(i)(3)(B). The parties were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.))**

unable to reach any agreement regarding payment of attorneys' fees and costs, and Plaintiffs subsequently filed this action to recover the fees. Defendants now move to dismiss Plaintiffs' Complaint under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief can be granted.

### DISCUSSION

#### I. Standards for a Motion to Dismiss

**\*2** When reviewing a motion to dismiss, the Court examines the sufficiency of the complaint rather than the merits of the lawsuit. *Triad Assoc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir.1989)."[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence that supports the claim."*Scheur v. Rhodes,* 416 U.S. 232, 235 (1974). A motion to dismiss will be granted only if the Court finds that the plaintiff can put forth no set of facts that would entitle her to relief. *SeeVenture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 432 (7th Cir.1993); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). On a motion to dismiss, the Court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes that all well-pleaded facts are true. *SeeDimmig v.. Wahl,* 983 F.2d 86, 87 (7th Cir.1993).

#### II. Attorneys' Fees Under the IDEA

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."20 U.S.C. § 1415(i)(3)(B). By amendment in 1997, however, Congress limited the recovery of attorneys' fees in IDEA actions as follows: "Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action[.]"20 U.S.C. § 1415(i)(3)(D)(ii).

In their motion to dismiss, Defendants assert that Plaintiffs' action for attorneys' fees fails to state a claim upon which relief may be granted because § 1415(i)(3)(D)(ii) precludes such fees. In resolving this issue, the parties have not provided cases interpreting this recently enacted statutory provision, and the Court's research has similarly found no such case. Nevertheless, the approach that a district court must utilize to interpret a federal statute is well-established. In short, a court's analysis "begins with the language of the statute[,][a]nd where the statutory language provides a clear answer, it ends there as well."*Hughes Aircraft Co. v. Jacobson,* 119 S.Ct. 755, 760 (1999).

Here, the language of § 1415(i)(3)(D)(ii) is clear and unambiguous. The statute plainly states that an IDEA plaintiff may not recover attorneys' fees relating to any meeting of the IEP Team unless such a meeting was convened as a result of an administrative proceeding or judicial action. There is little room to debate the language of that statutory provision, and Plaintiffs have not advanced any contrary interpretation.[FN1]

> FN1. Parenthetically, the legislative history concerning the 1997 IDEA amendments reveals that Congress enacted the amendments at least in part in an effort to encourage parents and educators to work out their differences using nonadversarial means. *See*H.R.Rep. No. 105-95, 1997 U.S.C.C.A.N. 78 (1997).

Applying the clear and unambiguous language of § 1415(i)(3)(D) (ii) here, the Court finds Plaintiffs' claim for attorneys' fees to be barred. Plaintiffs' Complaint alleges that, upon receiving a request for a due process hearing, the District negotiated with Plaintiffs to work out the matter, convening at least two IEP meetings. (Cmplt.¶¶ 11-15.) The Complaint further asserts that those negotiations successfully resolved the matter without the necessity of administrative or judicial review. (*Id.* ¶¶ 16-17.)In short, Plaintiffs solely seek recovery for fees relating to IEP meetings (*see* Cmplt., Ex. 5),

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.))**

and there are no allegations that the IEP meetings were convened as a result of an administrative proceeding or judicial action.

*3 Plaintiffs contend that it was their request for a due process hearing, not the IEP meetings, that was the "catalyst for the relief obtained." (Pls. Resp. at 15.) Although it may be true that their request for a due process hearing "got the ball rolling," Plaintiffs have not demonstrated how the hearing request alone entitles them to fees. Although Plaintiff cite cases which granted recovery of fees in similar situations (*see* Pls. Resp. at 16-18), those cases predate the 1997 IDEA amendments which now clearly limit recovery of the fees Plaintiffs seek unless they are the result of an "administrative proceeding or judicial action." Plaintiffs have not established that the District convened the IEP meetings as the result of an "administrative proceeding." On the contrary, Plaintiffs' own allegations reveal that the District took a proactive role at an early opportunity thereby removing the need for administrative proceedings. The District's actions here were clearly in line with Congress's intention in enacting the 1997 amendments to the IDEA and, as such, the clear language of § 1415(i)(3)(D)(ii) bars Plaintiffs' claim.[FN2]

> FN2. Because the Court finds that § 1415(i)(3)(D)(ii) bars Plaintiffs' claim, the Court need not address Defendants' additional arguments that Plaintiffs were not a "prevailing party" and that the attorneys' fees and costs requested are unreasonable.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted.

N.D.Ill.,1999.
M.V. v. Gordon
Not Reported in F.Supp.2d, 1999 WL 417394 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.))

**H**
Brandon K. ex. rel. Larry K. v. New Lenox School
Dist.
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
     United States District Court,N.D. Illinois, Eastern
                         Division.
     BRANDON K, and his parents and next friends,
          Larry and Cindy K., Plaintiffs,
                            v.
     NEW LENOX SCHOOL DISTRICT, Defendant.
                    **No. 01 C 4625.**

                    Dec. 3, 2001.

          *MEMORANDUM OPINION AND ORDER*

COAR, J.
*1 Before this court is defendant's, New Lenox
School District ("the District"), motion to dismiss
plaintiffs', Brandon K., and his parents and next
friends, Larry and Cindy K., amended complaint
seeking attorneys fees and costs, pursuant to the Indi-
viduals with Disabilities Education Act,
("IDEA"), 20 U.S.C. § 1415(I)(3), 34 CFR §
300.513. For the following reasons, the defendant's
motion is granted in part and denied in part.

                    Background

Brandon K. is a student with a learning disability
who resides in the District and is eligible for special
education services under the IDEA. Plaintiffs Larry
and Cindy K. are his parents. The amended com-
plaint stems from the following implementing regu-
lation of the IDEA statute:

In any action or proceeding brought under Section
615 of the Act, this court may ... award reasonable
attorneys fees as part of the costs to the parents of a
child with a disability who is the prevailing party.

20 U.S.C. § 1415(I)(3), 34 CFR § 300.513.

On or about November 6, 2000, the plaintiffs re-
quested a due process hearing under the IDEA in
order to obtain specialized instruction for Brandon
K. On the morning of the hearing, February 16,
2000, the District made an offer of settlement. After
negotiation, a settlement was reached that included
an acceptable educational program for Brandon K.,
as well as a similar program of services to meet the
needs of his older sister with a specific learning dis-
ability, Brittany K.[FN1]

          FN1. As the rules of the Illinois State
          Board of Education do not allow more than
          one student to be included in a proceeding,
          a separate transcript was made of the set-
          tlement agreement terms for the second
          child, Brittany K.

On February 19, 2000, Agreed Orders regarding
Brandon K. and Brittany K. were transcribed and
entered. Pursuant to the Agreed Order, the first In-
dividual Educational Plan (IEP) meeting was con-
vened by Mary E. Moran ("Convener Moran") on
April 3, 2001. Convener Moran requested that the
parents and the School District each choose a con-
tact person to assist the Convener in communicat-
ing with each party, their experts, their other team
members and their respective attorney. The parents
chose Ms. Alice Vaught ("Vaught") M.Ed. Con-
vener Moran assigned responsibilities to Vaught in
order to implement the settlement agreements. At
the second IEP meeting, held on June 14, 2001, it
was decided that both Brandon K. and Brittany K.
would be placed at Acacia Academy, a private
school for children with learning disabilities. An
IEP was drafted for each child.

The plaintiffs were represented throughout the
above process by Joseph Daniel Thomas
("Thomas"), an attorney licensed in Illinois and In-
diana. Prior to the filing of the amended complaint,
the plaintiffs made a demand for payment of their
attorney fees, expenses and costs upon counsel for
the defendant. There was no response from the de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.))**

fendant or its counsel. Subsequently, plaintiffs filed amended complaint seeking the reimbursement of attorneys's fees and costs associated with obtaining an appropriate educational placement for Brandon K.

### Standard of Review

Typically, a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the defendant will prevail on the merits, but instead whether the defendant has properly stated a claim for which relief may be granted. *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir.1995). The court must accept as true all of the defendant's well-pleaded factual allegations, as well as all reasonable inferences. *Id.* Thus, the court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Ledford v. Sullivan,* 105 F.3d 354, 357 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 78, 104 S.Ct. 2229, 2232 (1984)). Any ambiguities are construed in favor of the defendant *Curtis v. Bembenek,* 48 F.3d 281, 283 (7th Cir.1995). However, the court need "not strain to find inferences favorable to the defendant which are not apparent on the face of the complaint."*Coates v. Illinois State Bd. of Ed.,* 559 F.2d 445, 447 (7th Cir.1977).

### Analysis

**\*2** Defendant moves to dismiss plaintiffs' amended complaint seeking payment of attorneys' fees and costs pursuant to Section 1400 of the IDEA. For the following reasons the defendant's motion is denied in part and granted in part.

### A. Attorneys' fees

The IDEA provides, "The court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is a prevailing party."20 U.S.C. § 1415(i)(3)(B). The parties dispute whether plaintiffs meet the definition of a prevailing party. The complaint alleges plaintiffs are prevailing parties because an enforceable settlement agreement between plaintiffs and the District was transcribed and entered as a record for the due process hearing.

Recently the Supreme Court, in *Buckhannon Board and Care Home, Inc.,* 121 S.Ct. 1835 (2001), found that acquiring prevailing party status is only possible upon "a corresponding alteration in the legal relationship of the parties."*Id.* at 1840.Accordingly, *Buckhannon* grants prevailing party status to parties who receive favorable judgments on the merits or enter into settlement agreements enforced through consent decrees. *Id.*"Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered "chang[e][in] the legal relationship between [the plaintiff] and the defendant."*Id* . (internal citations omitted). In dicta, the Court intimated that private settlements do not confer prevailing party status. *Id.* at n. 7 ("Private settlements do not entail the judicial approval and oversight involved in consent decrees").

The plaintiffs contend that the negotiations which led to the Agreed Order did, in fact, change the legal relationship between the plaintiffs and the District and therefore allows them to qualify as a prevailing parties under *Buckhannon.*[FN2]The District argues that the negotiations were more like a private settlement than a consent decree because a voluntary settlement agreement was reached between the parties without any judicial intervention or an administrative hearing.

> FN2. In the alternative, the plaintiffs contend that *Buckhannon* is inapplicable because that case involved the Americans With Disabilities Act ("ADA") and the Fair Housing Amendments Act ("FHAA") rather than the IDEA. This court agrees, however, with the other courts that have found this distinction to be unpersuasive.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.))**

*Jose Luis R., et al. v. Joliet Township H.S. District 204,* 2001 WL 1000734, *1 (Aug. 29, 2001, N.D.Ill.) (stating that "[t]here is no language in *Buckhannon* suggesting the opinion is limited to ADA and FHAA cases. The Court refers to fee-shifting statutes in general throughout the opinion. *Id.* at 1843.);*J.S. & M.S. v. Ramapo Central School District,* 2001 WL 1180923, *4 (Sept. 21, 2001, S.D.N.Y.).

The fact, however, that the plaintiffs and the District came to an agreement prior to the official commencement of an administrative hearing does not conclusively establish that the settlement negotiations were private. *Jose Luis R., et al. v. Joliet Township H.S. District 204,* 2001 WL 1000734, *1 (Aug. 29, 2001, N.D.Ill.). A consent decree is defined as a "contract of the parties entered upon the record with the approval and sanction of a court of competent jurisdiction, which cannot be set aside without the consent of the parties ..."*Barron's Law Dictionary,* p. 97 (1996).

In this case, it is undisputed that the terms of the settlement, including placement of Brandon K. and Brittany K. at a private school and direction to draft an IEP for each child, were transcribed and entered into the due process hearing as a formal Agreed Order of the Hearing Officer, Atty. Susan Einspar-Wayne on February 19, 2001. Interpreting all the facts in favor of the plaintiffs, the legal relationship between the plaintiffs and the District changed when the settlement terms were issued as an Agreed Order by an impartial hearing officer. Accordingly, the plaintiffs may be entitled to prevailing party status.

### B. Fees Relating to any Meeting of the IEP Team

**\*3** In 1997, Congress amended the IDEA, limiting recovery of attorneys' fees. The amendments plainly state: "Attorneys' fee may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an adminis-

trative proceeding or judicial action[.]"20 U.S.C. § 1415(i)(3)(D)(ii). There is little room to debate the language of that statutory provision, and plaintiffs have not advanced any contrary interpretation or precedent. In this case, as in the case cited by the defendant, *M.V. v. Bloomingdale Elem. Sch. Dist.,* 98 C 8408, 1999 WL 417394 (Marovich, J. N.D.Ill.1999), plaintiffs seeks attorneys' fees and experts fees which are associated with the various IEP meetings for Brandon K. The IEP meetings were not convened as a result of any administrative proceeding or judicial action, but rather by official and formal consent. Consequently, applying the clear and unambiguous language of § 1415(i)(3)(D)(ii) here, this court finds the plaintiff is barred from recovering fees associated with the IEP meetings.

### C. Expert Fees

As indicated, the IDEA provides that "the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents of a child with a disability who is the prevailing party."20 U.S.C. § 1415(i)(3)(B). Whether expert fees are payable under this section of the IDEA remains unsettled in the law. Indeed, as noted in the case cited by the defendants, *Eirschele v. Craven County Bd. of Ed.,* 7 F.Supp.2d 655, 658 (E.D .N.C.1998), no circuit court, apparently, has ruled on whether expert witness fees can be considered "costs" under this provision. The statute does not expressly mention of the cost of experts.

Nevertheless, plaintiffs argue that Congress intended that expert fees be part of the costs payable under the statute. In support of their argument plaintiffs cite to a House of Representatives Conference Report:

The conferees intend that the term "attorneys fees as part of the costs" include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guard-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.))**

ian's case in the action or proceeding, as well as traditional costs incurred in the course of litigating a case.

H.R.Conf.Rep. No. 99-687, at 5 (1986). Relying on this history, some courts have found that properly documented and reasonable expert fees are payable. *See Pazik v. Gateway Regional School District,* 130 F.Supp.2d 217, 220 (D.Mass.2001); *B.K. v. Toms River Bd. of Educ.,* 998 F.Supp. 462, 473 and n. 14 (D.N.J.1998); *Field v. Haddonfield Bd. of Ed.,* 769 F.Supp. 1313, 1323 (D.N.J.1991).

This court, however, agrees with the defendant that expert fees are not recoverable under the IDEA. The defendant cites two cases for its proposition, *Eirschele* and *Cynthia K. v. Board of Ed. Of Lincoln-Way High Sch. Dist. 210,* 1996 WL 164381, *2 (Castillo, J. N.D.Ill.). Both cases rely on a similar interpretation of the Supreme Court's holding in *West Virginia Univ. Hosp. V. Casey,* 499 U.S. 83 (1991), in which the Supreme Court interpreted 42 U.S.C. § 1988, whose then-current language was almost identical to 20 U.S.C. § 1415, as not authorizing recovery of expert witness fees as part of the costs and attorneys' fees recoverable by the prevailing party in civil rights litigation. Writing for the majority in *Casey,* Justice Scalia acknowledged the IDEA House Conference Report upon which the plaintiff there made reference. Such legislative history, Justice Scalia stated, "undercuts rather than supports [the plaintiff's] position: The specification would have been quite unnecessary if the ordinary meaning of the term included those elements. The statement is an apparent effort to depart from ordinary meaning and to define a term of art."*Casey,* 499 U.S. at 91 n. 5, 111 S.Ct. 1138.

*4 This court agrees with the *Eirschele* court's analysis which reasoned "that footnote 5 of the *Casey* opinion only acknowledged a party's argument and, instead of adopting that position as law, flatly rejected it ... Furthermore, *Casey* made clear that conference committee interpretations that are not evidenced by the plain language of the adopted statute do not provide such authority."Consequently, similar to *Eirschele* court, this court holds that because the Supreme Court in *Casey* held that the words "reasonable attorney's fees as part of the costs" did not provide for an award of expert witness fees, Section 1415's provision for "reasonable attorneys' fees as part of the costs" likewise does not provide for an award of expert witness fees, despite what some members of the House conference committee who considered the statutory language may have intended.

### Conclusion

For the foregoing reasons, the defendant's motion to dismiss the plaintiffs' amended complaint is granted in part and denied in part.

N.D.Ill.,2001.
Brandon K. ex. rel. Larry K. v. New Lenox School Dist.
Not Reported in F.Supp.2d, 2001 WL 34049887 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2007 WL 756586 (E.D.Va.)
**(Cite as: 2007 WL 756586 (E.D.Va.))**

**C**
County School Bd of York County, Virginia v. A.L.
E.D.Va.,2007.
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Newport News Division.
COUNTY SCHOOL BOARD OF YORK COUNTY,
VIRGINIA, Plaintiff,
v.
A.L., And his parents And next friends,
A.L. and S.L., Defendants.
**Civil Action No. 4:03cv174.**

March 6, 2007.

Carla Blake Hook, Office of the County Attorney,
County of York, Yorktown, VA, for Plaintiff.
Jonathan Gerald Martinis, Commonwealth of Virginia,
Richmond, VA, for Defendants.

*OPINION AND ORDER*

HENRY COKE MORGAN, JR., Senior United States
District Judge.
**\*1** This matter is before the Court on Defendants' Motion for Attorneys' Fees and Costs. Plaintiff ("York")
argues Defendants are not entitled to attorneys' fees for
failing to procedurally perfect their motion, and in the
alternative, asserts Defendants should be awarded fees
in a lesser amount. York also denies Defendants are entitled to costs, contending Defendants defaulted in making this claim and that the fees sought are excessive. For
the reasons stated herein, Defendants' Motion is
**GRANTED** in part and **DENIED** in part.

I. PROCEDURAL BACKGROUND[FN1]

> FN1. This section does not represent the entire
> procedural background of the case, but only
> that which is relevant to the Court's determination of the present issues.

On December 30, 2003, Plaintiff filed its Complaint in
this matter under the Individuals with Disabilities Act
("IDEA"), 20 U.S.C. § 1400, *et seq.,* contesting the decision of an administrative hearing officer concerning
the individualized education program ("IEP") of A.L.
("Defendant A.L."), a mentally handicapped student.
Doc. 1. The Complaint challenged the hearing officer's
determination that Defendant A.L.'s IEP was insufficient to afford him a free appropriate public education
("FAPE"), as required by law. *Id.* York sought to have
the administrative ruling reversed, and ultimately to
have York's suggested IEP implemented over Defendants' objections. *Id.*

On March 12, 2004, Defendants filed their Answer, requesting the judgment of the hearing officer be upheld
and the Complaint dismissed. Doc. 6. Defendants' chief
concern with York's proposed IEP, which was the subject of the litigation, "was that [Defendant] A.L. receive
sign language services consistent with the requirements
set forth in the Virginia Regulations Governing Special
Education Programs."Doc. 31 at 2 (Opinion and Order
of January 18, 2005).

On January 18, 2005, the Court partially affirmed the
hearing officer's decision that Defendant A.L.'s IEP was
inadequate, and ordered that York remedy the
situation.FN2Doc. 31. Specifically, the Court ordered
that Defendant A.L. is entitled to receive more qualified
communicative assistance [FN3] and direct occupational
therapy services, contrary to Plaintiff's proposed IEP.
*Id.* at 7-12.However, the Court also ruled, consistent
with the views of professional educators and York, that
Defendant A.L.'s IEP is neither required to afford additional specific transitional goals and objectives, nor
homework assignments to Defendant A.L. *Id.* at 7,
10-11.Furthermore, the hearing officer's finding that
York committed two procedural violations was affirmed. *Id.* at 5-7, 11.

> FN2. Defendants agree that the Court's Opinion
> and Order of January 18, 2005 did not completely affirm the hearing officer's decision.
> Doc. 34 at 2 (Memorandum of Law in Support
> of Defendants' Motion for Attorneys' Fees and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
(Cite as: 2007 WL 756586 (E.D.Va.))

Page 2

Costs of February 1, 2005).

FN3. Defendant A.L. is entitled to receive communicative assistance provided by a VQAS Level III interpreter as required by law. Doc. 31 at 10.

On February 1, 2005, Defendants filed their initial Motion for Attorneys' Fees and Costs and supporting Memorandum, requesting a total of $51,751.85. Docs. 33, 34. Therein, Defendants expressly reserved the right to seek additional fees for further work in the case. Doc. 34 at 1 n. 1. York filed its Memorandum in Response to Defendants' Motion for Attorneys' Fees and Costs on February 14, 2005. Doc. 37. On February 22, 2005, Defendants filed their Rebuttal Memorandum of Law in Support of Defendants' Motion for Attorneys' Fees and Costs. Doc. 40.

*2 In the Court's Opinion and Order of May 23, 2005, the Court, with the agreement of both parties, stayed consideration of Defendants' Motion for Attorneys' Fees and Costs. Doc. 43 at 7, 9. The Court did not require York to post a supersedeas bond, despite Defendants' objection. *Id.* at 7-9. The Court's Opinion and Order of May 23, 2005 did not indicate any triggering circumstances which would automatically lift its stay of consideration of Defendants' Motion for Attorneys' Fees and Costs. Doc. 43 at 9.

York appealed, and the Fourth Circuit Court of Appeals affirmed the Court's Opinion and Order of January 18, 2005, issuing its judgment, effective on September 7, 2006. Docs. 44-46.

On January 26, 2007, Defendants filed their Supplemental Memorandum of Law and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs. Doc. 47. York filed its Brief in Opposition to Defendants' Motion for An Award of Attorneys' Fees and Costs and Supplemental Motion on February 8, 2007. Doc. 48. On February 16, 2007, Defendants filed their Reply Memorandum of Law and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs. Doc. 50. Most recently, at the hearing on this motion, Defendants filed a Supplemental Statement of Work Per-

formed by Jonathan G. Martinis, Doc. 53, and a Declaration of Shannon M. Manning Regarding Filing of Defendants' Supplemental Memorandum and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs. Doc. 52. Lastly, at hearing, Defendants moved to withdraw its request for a portion of an interest award, which the Court grants.

## II. STANDARD OF REVIEW

Regarding claims brought pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i) provides "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."20 U.S.C. § 1415(i)(3)(B)(i)."Fees awarded under this paragraph [of the IDEA] shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."20 U.S.C. § 1415(i)(3)(C).

The Court has "broad discretion" in determining the appropriate fee award.*Carroll v. Abramson,* 53 F.3d 626, 628 (4th Cir.1995) (finding the court did not abuse its discretion in ordering a low attorneys' fee award in light of the degree of success obtained) (citing *Daly v. Hill,* 790 F.2d 1071, 1085 (4th Cir.1986)).

## III. DISCUSSION

### A. Plaintiff's Procedural Arguments to Entire Motion

York contends Defendants' entire motion is defective on several procedural theories. Each argument is without merit. First, York claims Defendant's motion for fees is withdrawn in light of Local Rule 7(E). Doc. 48 at 2. Local Rule 7(E) deems a motion withdrawn if not set for hearing within 30 days from the filing of the motion. E.D. VA. LOC. CIV. R.. 7(E). This contention is without merit because Defendants' Motion for Attorneys' Fees and Costs was stayed by agreement of both parties pending York's appeal. York's argument misap-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
(Cite as: 2007 WL 756586 (E.D.Va.))

Page 3

prehends the nature and effect of a stay in judicial proceedings, as Plaintiff implicitly argues the stay was lifted as of "September 8, 2006, when the Court of Appeals delivered its Judgment in this Court."Doc. 50 at 2. Generally, the lifting of a stay is governed by the terms of the order granting the stay. *See Bryte v. Am. Household, Inc.*, 142 Fed. Appx. 699, 704 (4th Cir.2005) ("the stay entered with respect to Sunbeam's retention policy will be lifted by the terms of the stay order."). The Court's Opinion and Order of May 23, 2005 did not specify any triggering event(s) which would automatically lift the stay of Defendants' Motion for Attorneys' Fees and Costs, but rather commented that the Court may address any financial hardship on Defendants by awarding interest in addition to any fee award, if appropriate. Doc. 43 at 7, 9. Moreover, even where action by an appellate court obviates the need for a stay, further action, by the court that entered the stay, is typically needed to lift the stay. *See Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 326 (4th Cir.2005) ("After the Supreme Court of South Carolina dismissed the writ of certiorari, the district court lifted its stay in this case, and both parties later filed motions for summary judgment."); *A.H. Robins Co., Inc. v. Dalkon Shield Claimants Trust*, 972 F.2d 77, 81 (4th Cir.1992) ("For that reason, we remand this case to the district court with instructions to stay the proceedings...."). Otherwise, where the Fourth Circuit has acted to lift a stay of the district court, it has expressly done so in its ruling. *United States v. Fernandez*, 887 F.2d 465, 471 (4th Cir.1989) ("The appeal in this case is hereby dismissed, and the stay of trial proceedings is accordingly lifted."). As the Fourth Circuit's opinion did not expressly lift the stay in this matter, and the Court's Opinion and Order of May 23, 2005 did not provide for any circumstances whereby the stay would be automatically lifted, the Court concludes the stay was still in effect so as to render Defendants' setting of hearing for its Motion for Attorneys' Fees and Costs as proper under the local rule. However, the Court will address Defendants' belatedness in setting this matter for hearing as part of its determination not to award interest upon the fee award. Moreover, it is hereby **ORDERED** that the previous stay concerning consideration of Defendants' Motion for Attorneys' Fees and Costs is lifted.

*3 Next, York argues Defendants' supplemental memorandum of January 26, 2007 should be viewed as a new motion and determined late under FED. R. CIV. PROC. 54(d)(2)(B). Doc. 48 at 3. Defendants correctly argue this filing is not a new motion, but rather a memorandum supplementing a motion which was timely filed. Doc. 50 at 4-5; *see* Doc. 47 at 1 (titled, "Supplemental *Memorandum* of Law and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs") (emphasis added). Accordingly, the Court views this as one motion for attorneys' fees and costs, consisting of several submissions detailing the work performed over the various segments of the case. Therefore, the Court concludes York's contention under FED. R. CIV. PROC. 54(d)(2)(B) is without merit.

### B. Costs

Defendants request $574.85 in costs, itemized as two separate expenditures. Doc. 34, Ex. 1 at unnumbered p. 6 (Shannon M. Manning's Statement of Work). York contends Defendants are barred from recouping these costs by virtue of the timing and format of their request, and the nature of the costs detailed. Doc. 37 at 3-5. Defendants do not rebut York's contentions in any of their later filings on this subject. *See* Docs. 40, 47, 50, 52, 53. Defendants' failure to properly file its Bill of Costs precludes recovery of these costs. Accordingly, the Court **DENIES** Defendant's Motion for Costs.

#### 1. Procedural Default: Timeliness

The local rule provides, in pertinent part: "Bill of Costs. The party entitled to costs shall file a bill of costs as provided in 28 U.S.C. §§ 1920 and 1924 within eleven (11) days from entry of judgment, unless such time is extended by order of the Court."E.D. VA. LOC. CIV. R.. 54(D)(1). Defendants' Motion for Attorney's Fees and Costs of February 1, 2005 was filed after the eleven (11) days allotted, as both the Court's Opinion and Order, and Judgment, were entered on January 18, 2005. Doc. 31-33. No Bill of Costs was filed with the Clerk. Defendants' Motion of February 1, 2005 was the first filing by Defendants resembling a Bill of Costs, which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

must be timely filed under the rule. E.D. VA. LOC. CIV. R.. 54(D)(1). Accordingly, the Court should deny Defendants' Motion for Costs as no Bill of Costs or similar documentation was timely filed. *See JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.,* 245 F.Supp.2d 756, 761 (E.D.Va.2002) (denying motion for leave to file bill of costs out of time, which was filed 25 days after the filing deadline); *Marryshow v. Flynn,* 986 F.2d 689, 693-94 (4th Cir.1993) (indicating an untimely filing creates a stricter situation than a defective filing for attorneys' fees).

### 2. *Procedural Default: Format of List of Costs*

Defendants contend York should be taxed $574.85 for two services paid by Defendants. Doc. 34, Ex. 1 at unnumbered p. 6. Shannon Manning's Statement of Work indicates a cost of $375.20 for "Pat Trice interpreting fee for Christine Plunk deposition" and $199.65 for "Court reporter and transcript for Christy Morgan deposition."*Id.*

*4 Plaintiff notes that no bill of costs was filed by Defendants with the Clerk, but rather the request was integrated into their Motion for Attorney's Fees. Doc. 37 at 3.

The local rule states the bill of costs "shall distinctly set forth each item thereof so that the nature of the charge can be readily understood," and further requires "[a]n itemization and documentation for requested costs in all categories shall be attached to the cost bill."E.D. VA. LOC. CIV. R.. 54(D)(1). Shannon Manning's Statement of Work does not comply with the rule insofar as it was not directed to the clerk, was not formatted as a bill of costs, and does not contain documentation of the alleged services. Doc. 34, Ex. 1 at unnumbered p. 6.

Therefore, Defendants did not comply with the local rule in terms of the formatting, filing, and documentation of their Bill of Costs. Because Defendants' motion for costs is **DENIED** for procedural reasons, the Court does not address the reasonableness of the costs sought.

### C. *Attorneys' Fees: Legal Principles*

Defendants have moved to recoup attorneys' fees from the Plaintiff. Docs. 33, 34, 40, 47, 50, 52, 53. Initially, shortly after the Court rendered its Opinion and Order of January 18, 2005, Defendants moved the Court to award $51,177.00 in attorneys' fees, reflecting the work of attorneys Shannon M. Manning ("Manning") and Kristin B. Cooper ("Cooper"), at a rate of $150.00 per hour for each, over an aggregate of 341.18 hours. Doc. 34 at 5. This motion was made on February 1, 2005, within the allotted 14 days from judgment, as required by statute. FED. R. CIV. PRO. 54(d)(2)(B). This assessment included all of the effort expended from the initiation of the case through February 1, 2005, and expressly reserved the right to seek remuneration for additional fees incurred over the pendency of the litigation. Doc. 34 at 5-6; Doc. 34, Ex. 1 at unnumbered p. 14; Doc. 34, Ex. 2 at unnumbered p. 14 (Kristin B. Cooper Statement of Work Performed). Both Manning and Cooper submitted Declarations indicating their experience and work performed on this case. Doc. 34, Exs. 1-2. Moreover, Defendants included the Declaration of attorney Frank M. Feibelman, which estimated the reasonable market rate of these attorneys' services. Doc. 34, Ex. 3.

On January 26, 2007, Defendants filed a supplemental memorandum, together with exhibits, reflecting additional fees not covered in their initial memorandum. Doc. 47. Therein, Defendants assess 69.92 hours of work by Manning, and 24.67 hours of work by Martinis, all of which occurred since February 1, 2005. Doc. 47, Ex. B at 1-4; Doc. 47, Ex. C at 1-3. Martinis also requests 6.0 hours for work expended regarding this motion. Doc. 50, Ex. B. Additionally, at hearing, Defendants submitted a Supplemental Statement of Work Performed by Jonathan G. Martinis, which accounted for his efforts immediately leading up to the hearing and during the hearing. Doc. 53. Plaintiff objected to the document because it was not produced prior to the hearing. Typically, Plaintiff's objection would be well founded. However, the unique nature of this motion, requesting compensation for work performed on the litigation that is pending, leaves the moving party with no other choice but to submit last minute estimates for its most recent work. In Martinis' most recent request, he

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

asserts 7 hours and 45 minutes (7.75 hours) for billable work performed and also details tasks for which he is not charging. Doc. 53. Plaintiff did not contest any of these entries as unreasonable or clerical, and the Court, upon reviewing the submission, concludes all the entries are reasonable and reflect legal work.

### 1. Burden of Proof

**\*5** Where legal fees are sought, "the fee applicant bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances."*Rucker v. Sheehy Alexandria, Inc.,* 255 F.Supp.2d 562, 564 (E.D.Va.2003) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Respecting the total work claimed, "fee claimants must submit documentation that reflects 'reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity,' sufficient to permit the court to weigh the hours claimed and exclude hours that were not 'reasonably expended.' " *Id.* (citing *EEOC v. Nutri/System, Inc.,* 685 F.Supp. 568, 573 (E.D.Va.1988)); *see Hensley,* 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."). "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id* . at 564 n. 3 (citing *In re Great Sweats, Inc.,* 113 B.R. 240, 244 (Bankr.E.D.Va.1990)).

"[D]etermination of the hourly rate will generally be the critical inquiry in setting the 'reasonable fee,' and the burden rests with the fee applicant to establish the reasonableness of a requested rate."*Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) (citing *Blum v. Stenson,* 465 U.S. 886, 895-96 (1984))."In addition to the attorney's own affidavits, the fee applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.' " *Id.* (citing *Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987) (internal quotation omitted)).

The overall fee award may be reduced due to inadequate documentation by either "identifying and disallowing specific hours that are not adequately documented, or by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity and the counsel involved."*Hensley,* 461 U.S. at 433 (citing *Nutri/System, Inc.,* 685 F.Supp. at 576 (citation omitted)).

### 2. Computing the Award

#### a. Prevailing Party

In determining the amount to award, if any, in attorneys' fees, the first step is to determine whether the moving party is the prevailing party. *Hensley,* 461 U.S. at 433 (considering a claim for attorneys' fees under 42 U.S.C. § 1988).[FN4] This is a threshold finding, and is generously formulated to consider a party prevailing "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."*Id.* (citing *Nadeau v. Helgemoe,* 582 F.2d 275, 278-79 (1st Cir.1978)); *Farrar v. Hobby,* 506 U.S. 103, 109 (1992) (alternatively noting a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiff"). York does not dispute Defendants' assertion that they are the prevailing party under this standard. Doc. 37 at 6.

> FN4."The term 'prevailing party' connotes the same general meaning under [§ 1415(i)(3)(B)(i), the Rehabilitation Act,] and 42 U.S.C. § 1988, and cases interpreting [these] sections apply the same principles to determine a plaintiff's entitlement to attorneys' fees ."*Combs v. Sch. Bd. of Rockingham County,* 15 F.3d 357, 360 (4th Cir.1994) (citing *Tice v. Botetourt County Sch. Bd.,* 908 F.2d 1200, 1205 n. 4 (4th Cir.1990); *Child v. Spillane,* 866 F.2d 691, 692 n. 1 (4th Cir.1989)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

b. Determining Reasonable Fees: The Lodestar Figure

*6 Next, the Court is to determine what fee is reasonable. *Hensley,* 461 U.S. at 433. The beginning point of this analysis is to multiply the "number of hours reasonably expended on the litigation [ ] by a reasonable hourly rate."*Id.;Lilly v. Harris-Teeter Supermarket, Corp.,* 842 F.2d 1496, 1510 (4th Cir.1988). Thus, the Court should "exclude from this initial fee calculation hours that were not reasonably expended."*Id.* at 434."To make this calculation, the [C]ourt must necessarily exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation."*Lilienthal v. City of Suffolk,* 322 F.Supp.2d 667, 670 (E.D.Va.2004) (citing *Hensley,* 461 U.S. at 434)."The figure resulting from this calculation is more than a mere 'rough guess' or initial approximation of the final award ... [but is rather] *presumed* to be the reasonable fee to which counsel is entitled."*Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* 478 U.S. 546, 564 (1986) (emphasis in original) (citing *Blum,* 465 U.S. at 897). The product derived from this assessment represents "a lodestar figure." [FN5]*Saleh v. Moore,* 95 F.Supp.2d 555, 566 (E.D.Va.2000).

> FN5. In determining the lodestar figure, it is important to note that this amount only applies to legal work. A lesser rate may attend clerical and administrative functions. In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974), which has been adopted by the United States Supreme Court in several opinions, the court concluded regarding the performance of clerical tasks by attorneys:
>
> > It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

Critical to determining the lodestar amount is the Court's assessment of the "results obtained" in the litigation by the prevailing party. *Hensley,* 461 U.S. at 434;*Pennsylvania,* 478 U.S. at 565 (noting this factor is included in determining the lodestar figure, contrary to the previous ordering in *Hensley,* which placed the Court's consideration of this factor after the lodestar amount had been reached). This is particularly crucial where the prevailing party succeeded in pursuing only some but not all of his claims for relief. *Hensley,* 461 U.S. at 434.

Generally, "[w]here a [prevailing party] has obtained excellent results, his attorney should recover a fully compensatory fee[,] ... encompass[ing] all hours reasonably expended on the litigation."*Id.* at 435."In these circumstances the fee award should not be reduced simply because the [prevailing party] failed to prevail on every contention raised in the lawsuit."*Id* . The "most critical factor is the degree of success obtained," and the Court should not apply "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon."*Id.* at 436, 435 n. 11.No precise rule prevails in making this determination, and the Court may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."*Id.* at 436-37.

Most, if not all, of the twelve factors considered in *Johnson,* 488 F.2d at 717-19 should be addressed in defining the lodestar figure. *Daly,* 790 F.2d at 1077. These factors include:

1) the time and labor expended;

2) the novelty and difficulty of the issues;

3) the skill requisite to properly perform the legal service;

*7 4) the preclusion of other employment by the attorney due to acceptance of the case;

5) the customary fee;

6) whether the fee is fixed or contingent;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7) time limitations imposed by the client or the circumstances;

8) the amount involved and the results obtained;

9) the experience, reputation, and ability of the attorneys;

10) the undesirability of the case;

11) the nature and length of the professional relationship with the client; and

12) awards in similar cases.

*Daly,* 790 F.2d at 1075 n. 2 (citing *Johnson,* 488 F.2d at 717-19).

Other *Johnson* factors bearing on the Court's conclusion as to the lodestar figure include the "novelty and complexity of the issues,""the special skill and experience of counsel," and "the quality of representation." *Pennsylvania,* 478 U.S. at 565;*Daly,* 790 F.2d at 1077-78. Aside from those four factors mentioned, the Court does not further expound on which factors are to be considered for the lodestar calculation, and which apply in determination of whether to adjust the total amount. However, the Court emphasizes the need to apply as many factors as necessary to determine the reasonable rate and reasonable hours expended, prior to setting the lodestar amount. *See Daly,* 790 F.2d at 1078 (stating "the critical focus in calculating a reasonable attorneys' fee is in determining the lodestar amount,""[t]he proper point at which the *Johnson* factors are to be considered is in determining the reasonable rate and the reasonable hours," and "the lodestar fee is now the proper focus of the entire *Johnson* analysis in most cases").

c. Upward / Downward Adjustment of the Award

"The [Court] also may consider other factors identified in *Johnson,* 488 F.2d at 717-719, though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."*Hensley,* 461 U.S. at 434 n. 9

(citing *Copeland v. Marshall,* 205 U.S.App. D.C. 390, 400 (1980)); *Lilly,* 842 F.2d at 1510 (adjusting the lodestar figure in light of the remaining *Johnson* factors, after considering most of the *Johnson* factors to arrive at the lodestar figure). The Court must not weigh those factors again, which initially bore on its determination of the initial lodestar figure. *Pennsylvania,* 478 U.S. at 566 (regarding this practice as inappropriate "double counting"); *Daly,* 790 F.2d at 1082. As stated above, the lodestar figure is presumed correct, and if "properly calculated, adjustment of that figure will, in most cases, be unnecessary."*Daly,* 790 F.2d at 1078.

*D. Attorney's Fees: Application*

*1. Reasonable Market Rate*

a. Shannon M. Manning and Kristin B. Cooper: Evidence of Market Rate

Defendants have submitted a number of Declarations as evidence of the appropriate rate for the several attorneys' efforts. Docs. 34, Ex. 1-3; Doc. 47, Ex. A. Initially, Defendants asserted the work of Shannon M. Manning ("Manning") and Kristin B. Cooper ("Cooper") should be valued at $150.00 per hour for each, in light of the Declaration of Frank M. Feibelman ("Feibelman"). Doc. 34, Ex. 3. Feibelman, a practicing attorney, who handles "a great deal" of civil rights claims, and has "handled civil rights cases in the United States District Court for the Eastern District of Virginia," submitted his estimation of the value of the services of Manning and Cooper. Doc. 34, Ex. 3 at 2. He indicated a familiarity "with the prevailing market rates for lawyers who practice civil rights law in the Commonwealth of Virginia and in the Eastern District of Virginia," and based his assessment on that familiarity and "the *Curriculum Vitae* of Shannon M. Manning, Esquire and Kristin B. Cooper, Esquire."*Id.* He determined the attorneys each qualified to recover attorneys' fees at a rate of $150.00 per hour. *Id.* York does not dispute the $150.00 per hour rate asserted by Feibelman, but argues certain tasks should not be compensated. Doc. 37 at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
(Cite as: 2007 WL 756586 (E.D.Va.))

6-10.

**\*8** In Defendants' Supplemental Memorandum, they contend the appropriate fees for Manning and Cooper should be $275.00 per hour, and $200.00 per hour, respectively. Doc. 47 at 3. This is particularly odd, given Cooper has much more experience than Manning. Doc. 43, Exs. A-B. As a basis for this increase, Defendants submit the Declaration of Adrienne Volenik ("Volenik"), another expert in the prevailing market rates for lawyers engaged in this type of work. Doc. 47, Ex. A. Defendants submit no evidence for why Volenik's opinion should be valued over Mr. Feibelman's conclusion, but merely state they "now realize that the hourly rate they initially requested was inconsistent with the hourly rates charged by similarly experienced attorneys representing children in special education cases before this Court."Doc 47 at 3-4. At hearing, Defendants did little to expound on this explanation for why one declaration should be disregarded and the other accepted. Accordingly, because Defendants bear the burden of proving the reasonable market rate, and York did not contest the Defendants' initial calculation, The Court limits Defendants to their initial calculation of $150.00 per hour for both Manning and Cooper. Moreover, in light of the Court's assessment of the *Johnson* factors, the Court deems it proper to accept Defendants' initial proposed rate.

### b. Jonathan G. Martinis: Evidence of Market Rate

Regarding the appropriate rate for the services of Johnathan G. Martinis ("Martinis"), Defendants submitted the Declaration of Volenik, a licensed attorney who has recently been involved in "IDEA cases in the United States District Court for the Eastern District of Virginia in the past year."Doc. 47, Ex. A at 2. Based on her review of the material submitted by Defendants' counsel regarding the present motion and her familiarity "with the prevailing market rates" for lawyers practicing in the Commonwealth of Virginia and Eastern District of Virginia, she assessed the appropriate fee rate for Martinis at $350.00 per hour. *Id.* York does not dispute this fee rate for Martinis. Doc. 48. Accordingly, in light of the Court's assessment of the *Johnson* factors

and Plaintiff's acceptance of the proposed rate, the Court adopts the rate of $350.00 per hour as the reasonable rate for Martinis.

### c. *Johnson* Factors

In addition to weighing the evidence submitted by the parties, and their concessions, the Court assesses the reasonable rate in light of the particular qualifications of the attorneys and the nature of the case. These facts are considered in light of the twelve *Johnson* factors. While some courts have chosen to attach weights to each factor in a hyper-mathematical fashion, the United States Supreme Court has emphasized the test is not precise. Accordingly, the Court indicates its findings on each factor without attaching a certain weight to the particular factor as it bears on this case. In the present case, the Court's consideration of these factors seems to be less critical, given York's decision not to dispute the market rates asserted, except to argue Defendants should be limited to their initial estimation of appropriate rates for Manning and Cooper. Nonetheless, the Court still considers the *Johnson* factors in completing its analysis. Consistent with the emphasis of the United States Supreme Court, the Court considers the *Johnson* factors in setting its lodestar figure, and determines its assessment of the factors do not merit an adjustment in that rate.

### i. Results Obtained

**\*9** The most critical factor to consider in awarding attorneys' fees is the results obtained in the litigation. Presently, Defendants prevailed on their chief concern of the litigation, the sign language interpreter's qualifications. Doc. 31 at 2, 10-11. Additionally, Plaintiff's proposed IEP was found insufficient so far as it did not provide Defendant A.L. with occupational therapy services. *Id.* at 10-11. Lastly, Defendants prevailed in terms of the Court's finding that York committed two procedural violations in rendering its proposed IEP. *Id.* at 5-7, 11. The Court's ruling on the two procedural violations does not add much to Defendants' overall success, as the proposed IEP was rejected, but certainly does not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
(Cite as: 2007 WL 756586 (E.D.Va.))

count against them. The only two rulings limiting the success of Defendants were the Court's decisions to uphold the proposed IEP regarding the additional specific transitional goals and objectives, and homework assignments for Defendant A.L. *Id.* at 7, 10-11.Taking the case as a whole, the Court views the outcome as a nearly complete success for Defendants.

#### ii. Time and Labor Expended

This factor will be addressed in determining the total amount of hours to multiply by the reasonable market rate.

#### iii. Novelty and Difficulty of Issues Raised

The novelty and difficulty of the issues in this case bear in favor of awarding significant attorneys' fees for Manning and Cooper, the attorneys who dealt with the novel issue of "whether a school system has to provide a qualified sign language interpreter to a student with disabilities who is not deaf or hard of hearing."Doc. 34, Ex. 1 at 3; Doc. 34, Ex. 2 at 3; Doc. 47, Ex. E at 4. Moreover, according to counsel for Defendants, the present case "is the first case in which a school system has been ordered to provide a qualified sign language interpreter to such a student."*Id.* However, the Court notes that counsel indicated the novelty of the issue was already addressed by the number of hours expended in researching the issue. Doc. 34, Ex. 1 at 3; Doc. 34, Ex. 2 at 4 (using the same language: "As a result, I had to do extensive research into the laws and regulations governing special education[, and have] had to review thousands of pages of information regarding this student.").

#### iv. Skill Requisite to Properly Perform the Legal Service / Quality of the Representation / Experience, Reputation, and Ability of the Attorneys

While the Virginia Office for Protection and Advocacy ("VOPA"), the employer of counsel for Defendants, specializes in disability rights law, no showing has been made that exceptional skill is required to handle these type of cases. However, all three attorneys for the De-

fendant specialize and work solely in this area of the law. Thus, their focus on these types of cases does bear on the quality of representation they afforded to Defendant A.L. and his family.

Particularly, Manning has been employed with VOPA since February of 2002, and has served as lead counsel in over 50 disability rights cases. Doc. 34, Ex. 1 at 1-2. Manning's *Curriculum Vitae* (CV), while indicating a strong desire to assist the needs of society's most underprivileged, does not show special skills or experience sufficient to merit an increase in the fees awarded. Doc. 34, Ex. 1 at unnumbered p. 5.

**\*10** Cooper's Declaration and CV indicates a higher level of experience than Manning. Doc. 34, Ex. 2. She has been with VOPA since 1999, having served as lead counsel in over 75 disability rights cases, and has additional experience in handling civil rights cases. Doc. 34, Ex. 2 at 2, unnumbered 6. Cooper's extensive experience in this field is considered in the Court's determination of her reasonable market rate.

Martinis's Declaration and CV show a high level of experience and capacity in the field of disability law. Doc. 47, Ex. E. He has "represented clients in disability law cases for over twelve years,""had articles on disability law published in national journals,""served as lead counsel in over 500 disability rights cases," and frequently "speak[s] at conferences, public hearings and training sessions on disability rights issues."Doc. 47, Ex. E at 2. His extensive experience is reflected by his reasonable market rate.

#### v. Preclusion of Other Employment by Attorney Due to Acceptance of The Case

Manning, Cooper and Martinis indicate they had to scale back their representation of other clients and limit taking on new clients as a result of this litigation, which acted to the detriment of the disabled community as a whole. Doc. 34, Ex. 1 at 3; Doc. 34, Ex. 2 at 4; Doc. 47, Ex. E at 5. They also assert an inability to assist in VOPA's other stated objectives. Doc. 34, Ex. 1 at 4; Doc. 34, Ex. 2 at 4; Doc. 47, Ex. E at 5 (Martinis spe-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
**(Cite as: 2007 WL 756586 (E.D.Va.))**

Page 10

cifically details work that was postponed). However, such an effect is generally applicable in any significant case and is not so extreme as to alter their market rate.

### vi. Customary Fee

Defendants' evidence of the reasonable market rate for similarly experienced attorneys has been discussed above.

### vii. Whether the Fee is Fixed or Contingent / Undesirability of the Case

Because of Defendants' limited means, they could not afford to hire counsel, and counsel worked without compensation from their client. Doc. 47, Ex. E at 6. Defendants posit the effort and time required to effectively litigate this case, coupled with the novelty of the issues presented and lack of monetary reward, make this case highly undesirable. *Id.* The Court finds this factor to be of limited significance.

### viii. Time Limitations by Client or Circumstances

Defendants note that every day this action was pending, Defendant A.L. was denied a FAPE, and failed to receive the education to which he was entitled. Doc. 47, Ex. E at 6.

### ix. Nature and Length of Professional Relationship with the Client

No information has been submitted by Defendants which bears on this factor.

### x. Awards in Similar Cases

While Defendants do not submit information regarding awards in similar cases, they do note that the hourly rates set forth in "Volenik's Declaration are substantially less than those claimed by counsel employed by Troutman Sanders LLP-counsel for Plaintiff in this matter-in a 2006 Motion for Attorneys' Fees filed in a case where that firm represented a student in an IDEA case

before the Eastern District of Virginia."Doc. 47 at 4 n. 3. Defendants further concluded that those attorneys were less experienced than counsel for the Defendants. *Id.* While this is informative, it has no bearing on the Court's final conclusion because it does not represent an award, just a request, and therefore is outside of the considerations enumerated under *Johnson.*

### 2. *Hours Excluded as Non-legal*

*11 Counsel for Defendants all perform their own clerical tasks. Doc. 34, Exs. 1-2; Doc 47, Ex. E at 3. York contests 264 minutes of Manning's labor as purely secretarial and clerical work, arguing it should not be included in calculating the fee award. Doc. 37 at 9. Defendants have not rebutted York's contention concerning these 264 minutes. Docs. 40, 47, 50, 52, 53. York further disputes several entries of Cooper as indicating non-legal work, including "245 minutes spent 'organizing the file' and delivering documents,'"250 minutes travel to pick up and drop off Dr. Leichtman for a session of the due process hearing, and 185 minutes preparing the Attorney Fee Log, Affidavit and Resume."Doc. 37 at 9.

"Defendants freely admit that their counsel performed tasks that could have been performed by a paralegal or secretary," but argue the nature of their employment does not afford them with such niceties. Doc. 40 at 5-6. This argument is without merit, as *Johnson* accounts for the specific situation where an attorney has no other help, while still reaching the conclusion that the work should be billed at a lesser rate.

As noted above, it is the responsibility of the fee claimant to adequately document the time spent and the duties performed in working on the case. The Court's review of Cooper's Statement of Work Performed indicates several entries involving impermissible lumping of tasks, including combining organizing the file and other tasks. While it is possible to speculate whether these tasks were non-legal and/or what percentage was non-legal, no documentary clarification has been provided by Cooper. Moreover, Defendants have produced no evidence of the prevailing market rate for clerical or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 11
Slip Copy, 2007 WL 756586 (E.D.Va.)
**(Cite as: 2007 WL 756586 (E.D.Va.))**

secretarial work typical to that which was performed in this case. Accordingly, the Court cannot apportion time spent on non-legal work at any rate, because it has no evidence from which to conclude a reasonable market rate for non-legal work. Thus, the time spent on non-legal work will simply be deducted. Defendants' fees are deducted 264 minutes (4.4 hours) of Manning's time as purely secretarial, because Defendants have not disputed York's claim that this represents the amount of time Manning spent on non-legal work.

Second, the Court considers in detail the contested time of Cooper as follows, specifically listing the entries

concerning document delivery and organizing the file.FN6

> FN6. Because Plaintiff does not specifically identify which entries are objectionable, but rather categorizes the type of entries it disputes, the Court must perform a detailed analysis of these entries with less guidance than it would like. *See* Doc. 37 at 9-10.

| Date: | Work Performed: | Time Expended (Minutes): |
|---|---|---|
| 6.16.03 | Review and Organize File | 60 |
| 6.19.03 | Review and Organize Files, including case law | 90 |
| 7.1.03 | Fax a copy of Dr. Liechtman's proposed testimony to Dr. Leichtman; Hearing Officer Ternon Lee and Counsel for Complainant, Carla Hook and Dr. Leichtman's curriculum vitae Hearing Officer and opposing counsel, Carla Hook | 15 |
| 7.1.03 | Fax Complainant's pleading contesting Dr. Lawrence Leichtman's suitability as an expert witness to Dr. Leichtman | 10 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
(Cite as: 2007 WL 756586 (E.D.Va.))

Page 12

| 7.10.03 | Send Motion to Compel to Hearing Officer and Attorney for Complainant, Carla Hook | 10 |
| 7.21.03 | Prepare for Administrative Hearing; Review issues, law, prepare questions for witnesses; Organize Hearing Materials | 180 |

**\*12** The Court views the July 1, 2003 and July 10, 2003 entries listed on the above charted as non-legal efforts, and concludes the remainder of the entries on the chart represent legal work. The Court is persuaded that the task of organizing the file constitutes legal work, but finds the effort of faxing or sending documents is a clerical task. Therefore, the Court deducts 35 minutes (0.58 hours) from Cooper's efforts for this non-legal work.

Several other entries for preparing and sending emails and faxes are arguably nonlegal. However, the Court concludes the more complex aspect of preparing the correspondence, when compared with the relative ease of employing these two communication techniques, suggests it is proper to view these as legal tasks.

The Court also finds that York's contention that Cooper's "Preparation of Attorney Fee Log Affidavit and Resume" is non-legal is without merit, especially in light of the plethora of legal challenges York raises to these documents. Lastly, the Court agrees with York that 250 minutes (4.17 hours) should be deducted from Cooper's time, as involving transporting Dr. Leichtman to and from an administrative hearing, a non-legal function.

In sum, because the burden rests on the fee claimant to provide clear documentation of legal work, the Court deducts 264 minutes (4.4 hours) from Manning, and 285 minutes (4.75 hours) from Cooper.

### 3. Hours Not Reasonably Expended

As Plaintiff does not dispute the reasonableness of most of the hours asserted by Defendants, it is expeditious to consider only those areas of dispute.

#### a. Defendants' Motion *in Limine*

York argues Defendants should not be compensated for fees related to their unsuccessful motion *in limine.* Doc. 37 at 7. While the Court must consider the overall result of the litigation in terms of the moving party's success, no authority exists which persuades the Court to reduce the fee award for reasonable, but unsuccessful tactics within the litigation. The Court's inquiry is simply whether the time was reasonably expended. Defendants' motion *in limine*, while not prevailing, was reasonable in light of the cautionary note in "*Springer* [ ] not to turn a plaintiff's appeal into 'an unrestricted trial *de novo*.' " Doc. 31 at 4 (citing *Springer by Springer v. Fairfax County Sch. Bd.,* 134 F.3d 659, 666 (4th Cir.1998)). Accordingly, Defendants' fee award is not reduced for this reason.

#### b. Dispute over School Board's Deposition of Christine Plunk

Next, York asserts Defendants should not receive any compensation for 135 minutes (2.25 hours) spent by Manning disputing the deposition of Christine Plunk. Doc. 37 at 8. York considers this time a waste because the issue was ultimately resolved and the deposition was taken. Doc. 37 at 8. York submits no further information to show why Defendants' dispute of Christine

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 756586 (E.D.Va.)
**(Cite as: 2007 WL 756586 (E.D.Va.))**

Page 13

Plunk's deposition was unreasonable. As such, the Court will not conclude that just because a litigation dispute was ultimately resolved, it was unreasonable. Accordingly, York's contention is without merit based on the entries' clear reading, and the information offered by York.

#### c. Fees Spent on IEP Meetings During Pendency of Appeal

**\*13** Last, Plaintiff argues Defendants should not be allowed to recover fees for time spent at IEP meetings during the pendency of the appeal. Doc. 48 at 3-4. In support, Plaintiff asserts "[s]uch time is not spent on issues for which Defendants are prevailing parties and is precluded by statute." Doc. 48 at 3 (citing 20 U.S.C. § 1415(i)(3)(D)(ii), which provides, "IEP Team Meetings. Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)."). Defendants counter that this is inconsistent with the factual position taken by York before the Fourth Circuit, where they alleged the case was moot because a new IEP superceded the old proposed IEP that was the subject of the controversy. Doc. 50, Ex. A ("It is the position of the School Board that the February 28, 2006 IEP addendum is a replacement IEP which substantially alters A.L.'s placement and moots the issues in the case."). Accordingly, Plaintiff should not be allowed to argue factually distinct and opposed positions in the same proceeding, by arguing to the Fourth Circuit that the new IEP supercedes the disputed proposed IEP, and now maintaining to this Court that the time spent on the IEP by Defendants did not concern the contested issues before the Court. Accordingly, this argument is without merit.

#### 4. *Final Attorneys' Fees Award*

Defendants claim 249.27 hours for Manning, 141.83 hours for Cooper, and 38.42 hours for Martinis. Doc. 47 at 5; Doc. 50, Ex. B; Doc. 53.

In conclusion, Manning's legal work shall be compensated at a rate of $150.00 per hour for 244.87 hours, for a total of $36,730.50. This reflects the work claimed by Plaintiffs of 249.27 hours, minus 4.4 hours deducted as non-legal work.

Regarding Cooper's legal efforts, compensation at a rate of $150.00 per hour for 137.08 hours, for a total of $20,562.00 is awarded. This includes the requested 141.83 hours, less 4.75 hours spent on non-legal work.

Martinis submits he worked 38.42 hours, and his total is not contested by York. The uncontested rate of $350.00 per hour amounts to a total of $13,447.00.

Thus, the aggregate total award for the legal efforts of Defendants is $70,739.50. In its discretion, the Court finds no interest shall be awarded in recognition of its finding that Defendants substantially but not totally prevailed and for the additional reason that Defendants could have acted more promptly in requesting the additional fees included in their January 26, 2007 filing.[FN7]

> FN7. Defendants admit both at hearing, and in their Declaration of Shannon M. Manning Regarding Filing of Defendants' Supplemental Memorandum and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs, which was filed at hearing, that they did not act as expeditiously as possible, and delayed until prompted by the Court. Doc. 52.

#### IV. CONCLUSION

Accordingly, Defendants' Motion for Attorneys' Fees is **GRANTED,** and Defendants' Motion for Costs is **DENIED.** It is hereby **ORDERED** that Defendants be awarded $70,739.50 in Attorneys' Fees.

It is so **ORDERED.**

E.D.Va.,2007.
County School Bd of York County, Virginia v. A.L.
Slip Copy, 2007 WL 756586 (E.D.Va.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.