# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1125 | **DATE** | 7/15/2008 |
| **CASE TITLE** | H et al vs. Brd of Education of City of Chicago District 299 | | |

**DOCKET ENTRY TEXT**

Defendant's motion for summary judgment [22] is granted and Plaintiffs' motion for summary judgment [25] is denied.. In its discretion, the Court awards attorney's fees in the amount of $40,348.23 pursuant to 20 U.S.C. § 1415(i)(3). Plaintiffs' motions to strike Defendant's Local Rule 56.1 statements are denied as moot [31, 42].

■[ For further details see text below.]

Notices mailed by Judicial staff.
*Mail AO 450 form.

## STATEMENT

Kyler H., through her next friend Lojwanna M. ("Plaintiffs"), filed the present one-count Complaint against Defendant Board of Education of the City of Chicago, District 299 ("Board" or "Defendant") seeking attorney's fees incurred as a result of a due process hearing brought pursuant to the Individuals with Disabilities ACT ("IDEA"), 20 U.S.C. § 1400, *et seq*. Before the Court are the parties' Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendant's motion and denies Plaintiffs' motion. In its discretion, the Court awards attorney's fees in the amount of $40,348.23 pursuant to 20 U.S.C. § 1415(i)(3). Finally, the Court denies Plaintiffs' motions to strike Defendant's Local Rule 56.1 statements as moot.

### BACKGROUND

**I.     Parties**

Kyler H. is presently a nine year-old girl in the third grade. (R. 26-1, Pls.' Rule 56.1 Stmt. Facts. ¶ 1.) Following a three-day due process hearing, an Independent Hearing Officer ("IHO") issued an order that the Chicago Public Schools ("CPS") place Kyler H. at Acacia Academy, a private therapeutic day school in LaGrange, Illinois. (*Id*.) The IHO also ordered compensatory education services and other relief. (*Id*.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Lojwanna M. brings this action individually and on behalf of Kyler H. as the prevailing party in the administrative process. (*Id.* ¶ 2.) Lojwanna M. is Kyler H.'s mother and resides with Kyler H. within the boundaries of CPS District Number 299. (*Id.*) The Board is the Local Education Agency that is responsible for ensuring the provision of a free and appropriate education to all children residing in the district who, because of their disabilities, have special education needs. (*Id.* ¶ 3.)

## II. Kyler H.'s Disabilities & Academic Progress

Kyler H. was born with an umbilical cord wrapped around her neck causing developmental delays. (*Id.* ¶ 6; R. 24-1, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Based on these developmental delays, Kyler H. received early childhood services until she was three-years-old. (Pls.' Stmt. Facts ¶ 6; Def.'s Stmt. Facts ¶ 1.) Further, Kyler H. was determined eligible for special education services in 2002 and received Early Childhood Special Education Services ("ECSE") from September, 2002 until the end of the 2004-05 school year. (Pls.' Stmt. Facts ¶ 7; Def.'s Stmt. Facts ¶ 1.) Kyler H. has had behavioral difficulties since a young age, which have worsened over time. (Pls.' Stmt. Facts ¶ 12; Def.'s Stmt. Facts ¶ 6.)

In May 2005, when Kyler H. was six-years-old, the CPS conducted an evaluation and concluded that she had low-average intelligence and had academic functioning consistent with her cognitive abilities. (Pls.' Stmt. Facts ¶ 8; Def.'s Stmt. Facts ¶ 2.) As a result, the Individualized Education Program ("IEP") team terminated her eligibility for special education services. (Pls.' Stmt. Facts ¶ 8; Def.'s Stmt. Facts ¶ 2.) For the 2005-06 school year, Kyler H. was transferred to Warren Elementary School, where CPS staff placed her in a regular first grade classroom causing her to skip kindergarten. (Pls.' Stmt. Facts ¶ 9; Def.'s Stmt. Facts ¶ 3.) Kyler H. did not make academic progress during first grade – her progress reports show that she received failing grades in reading, writing, math, science, and social studies. (Pls.' Stmt. Facts ¶ 10; Def.'s Stmt. Facts ¶ 4.) During the second grade, Kyler H. experienced academic difficulties, receiving grades of F in reading, spelling, written comprehension, and science. (Pls.' Stmt. Facts ¶ 11; Def.'s Stmt. Facts ¶ 5.)

## III. IDEA Due Process Hearing

Kyler H.'s mother, Lojwanna M., requested that the CPS evaluate Kyler H. for a possible learning disability and emotional disorder in May 2006, April 2007, and May 2007. (Pls.' Stmt. Facts ¶ 13.) In June 2007, Lojwanna M. retained Mauk & O'Connor, LLP and Michael A. O'Connor to represent Plaintiffs. (*Id.* ¶ 14; Def.'s Stmt. Facts ¶ 7.) On Plaintiffs' behalf, O'Connor requested a due process hearing to redress alleged violations of the IDEA. (Pls.' Stmt. Facts ¶ 14; Def.'s Stmt. Facts ¶ 7.) The CPS then scheduled a special evaluation of Kyler H. (Pls.' Stmt. Facts ¶ 15; Def.'s Stmt. Facts ¶ 8.) Thereafter, certain CPS staff, including an Occupational Therapist, School Social Worker, Speech Language Pathologist, and School Psychologist, assessed Kyler H. (Pls.' Stmt. Facts ¶ 15; Def.'s Stmt. Facts ¶ 8.)

An IEP team convened on July 30, 2007 and again on August 2, 2007. (Pls.' Stmt. Facts ¶ 16; Def.'s Stmt. Facts ¶ 9.) The IEP team determined that Kyler H. was eligible for special education services, and thus prepared an IEP for Kyler H. (Pls.' Stmt. Facts ¶ 16; Def.'s ¶ 9.) Lojwanna M. objected to the adequacy of the evaluations and services provided in the IEP and Plaintiffs' counsel prepared an amended due process complaint reflecting these concerns. (Pls.' Stmt. Facts ¶ 17; Def.'s Stmt. Facts ¶ 9.)

A due process hearing began on October 24, 2007 before an IHO appointed by the Illinois State Board of Education. (Pls.' Stmt. ¶ 18; Def.'s Stmt. Facts ¶ 10.) Following the hearing, the IHO issued a decision and order on November 16, 2007, in which the IHO found that the CPS denied Kyler H. a free and appropriate public education ("FAPE") from June 2005 until November 2007 based on procedural violations, failure to evaluate

Kyler H. in a timely manner, inadequacies in the special evaluation conducted in the summer of 2007, and inadequacies in the IEP for the 2007-08 school year. (Pls.' Stmt. Facts ¶¶ 18, 19; Def.'s Stmt. Facts ¶¶ 10, 11.)

The IHO ordered that the CPS:

a. Provide Kyler with a private therapeutic day school placement at public expense at Acacia or a similar school;

b. Provide independent educational evaluations at public expense, including but not limited to psychological assessments of cognitive and academic skills, occupational therapy assessments, and assistive technology assessment, as well as reassessing the nature and extent of student's learning disabilities;

c. Reimburse the cost of the independent speech language evaluation;

d. Provide compensatory education services for loss of FAPE during the past two years, including

  i. Additional social work and/or psychological counseling services of 30 mpw (minutes per week) for two years;

  ii. Tutoring by a certified special education teacher at a site selected by the parents for two hours per week for two years;

e. Convene an IEP meeting and draft an IEP that will consider the full nature and extent of student's disabilities to provide a program of education and related services.

(Pls.' Stmt. Facts ¶ 20; Def.'s Stmt. Facts ¶ 12.)

In December 2007, Kyler H. began attending Acacia Academy. (Pls.' Stmt. Facts ¶ 21; Def.'s Stmt. Facts ¶ 13.) On March 27, 2008, Dr. Lisa Stanford conducted an independent neuropsychological evaluation of Kyler H. (Pls.' Stmt. Facts ¶ 22; Def.'s Stmt. Facts ¶ 14.) On May 14, 2008, an IEP meeting was convened to consider Dr. Stanford's evaluation. (R. 32-1, Pls.' Resp. ¶ 14.)

## IV. Attorney's Fees Claim

On January 3, 2008, Kyler H. and Lojwanna M., through their attorney, submitted an interim claim for attorney's fees to the CPS pursuant to 20 U.S.C. § 1415(i)(3). (Pls.' Stmt. Facts ¶ 23; Def.'s Stmt. Facts ¶ 15.) The total amount claimed was $42,242.28. (Pls.' Stmt. Facts ¶ 23; Def.'s Stmt. Facts ¶ 15.) Plaintiffs also submitted a supplemental fee petition for legal services incurred from January 1, 2008 through May 16, 2008, for $5,044.70. (Pls.' Stmt. Facts ¶ 25.)[1]

---

[1] The purpose of Local Rule 56.1 statements and responses is to identify the relevant evidence supporting the material facts, not to make legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). Accordingly, Defendant's legal argument made in response to Plaintiffs' Statement of Fact ¶ 25 is not properly before the Court.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## ANALYSIS

The IDEA provides a fee-shifting provision that allows courts to award attorney's fees to prevailing parties. *See Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 707 (7th Cir. 2005); *T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469, 474 (7th Cir. 2003). Specifically, the IDEA fee-shifting provision provides that in "any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs." 20 U.S.C. § 1415(i)(3)(B). "IDEA's fee-shifting provision allows an award of reasonable attorneys' fees to the party who prevails in an administrative proceeding as well as an action in court." *Linda T.,* 417 F.3d at 707. "A party 'prevails' for purposes of federal fee-shifting statutes when he or she obtains 'actual relief on the merits' of a claim that 'materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Id.* at 707-08 (quoting *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). The IDEA, however, prohibits recovery of certain fees related to IEP meetings. *See id.* at 709. Specifically, under Section 1415(i)(3)(D)(ii),

> [a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section.

20 U.S.C. § 1415(i)(3)(D)(ii); *see also Linda T.*, 417 F.3d at 709. Finally, the Court has considerable discretion in awarding attorney's fees pursuant to the IDEA's fee shifting provision. *See Linda T.,* 417 F.3d at 708; *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.,* 356 F.3d 798, 805 (7th Cir. 2004); *see also T.D.,* 349 F.3d at 477 ("the IDEA only guarantees the right to a free education; it does not explicitly guarantee the right to attorney's fees incurred in pursuit of that education.").

Here, the Board does not contest Plaintiffs' prevailing party status, nor does the Board oppose counsel's hourly rates. Instead, the Board objects to certain fee entries because they relate to IEP meetings held on July 30, 2007 and August 2, 2007 that were voluntarily convened by the Board prior to the October 2007 due process hearing. Specifically, the Board argues that these fees are statutorily barred under Section 1415(i)(3)(D)(ii). Indeed, the Seventh Circuit has stated that Section 1415(i)(3)(D)(ii) "prohibits recovery of fees associated with IEP meetings unless the meeting is convened by order of a court or administrative agency." *Linda T.*, 417 F.3d at 709. The policy behind barring attorney's fees associated with IEP meetings is that an "IEP Team is a mechanism for compromise and cooperation rather than adversarial confrontation. This atmosphere would be jeopardized if we were to encourage the participation of counsel in the IEP process by awarding attorneys' fees...." *T.D.,* 349 F.3d at 477 (quoting *J.C. v. Regional Sch. Dist. 10, Bd. of Educ.* 278 F.3d 119, 124 (2nd Cir. 2002)). Based on the clear and unambiguous language of the statute, the Court declines to award attorney's fees associated with the IEP meetings that took place before the due process hearing in October 2007 because the

parties voluntarily convened these meetings.

Nevertheless, Plaintiffs argue that because they requested a due process hearing in June 2007 – which was before the IEP meetings – the costs associated with these meetings should be awarded. Plaintiffs' argument not only contradicts the clear and unambiguous language of the statute, but goes against the cooperative and conciliatory purpose of IEP meetings. In fact, Plaintiffs' argument has been rejected by other courts in this district. *See, e.g., Brandon K. ex. rel. Larry K. v. New Lenox Sch. Dist.*, No. 01 C 4625, 2001 WL 34049887, at *3 (N.D. Ill. Dec. 3, 2001); *M.V. v. Gordon,* No. 98 C 8408, 1999 WL 417394, at *3 (N.D. Ill. June 15, 1999). In short, Plaintiffs' argument is simply unavailing.

The Court thereby deducts 5.85 hours for the July 30, 2007 IEP meeting, 8.25 hours for the August 2, 2007 IEP meeting, and 7.25 hours for the August 5, 2007 follow-up to the IEP meetings for a total of 21.35 hours. (*See* R. 1-1, Compl., Ex. B, Fee Request, at B-5.) The total reduction for these hours is $6,938.75 based on counsel's rate of $325 an hour. Thus, the Court awards a total of $40,348.23 in attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3).